## JONES v. THE STATE.

1. The act approved December 16, 1895 (Acts 1895, p. 257), had the effect to reincorporate what had formerly been the town of Moultrie as the City of Moultrie; and a writ of error from the city court of that city will not be dismissed on the ground that the act creating that court, which was approved November 13, 1901, was passed before the passage of the act approved November 20, 1901, granting a new charter to the City of Moultrie.

2. On the trial of an indictment for a misdemeanor, counsel are entitled as a matter of right to thirty minutes for each side for argument; and it is error for the court to limit the argument to a shorter time.

3. It was improper for the solicitor to say, in his argument to the jury: "I know defendant was guilty, or he would not have fled," there being no evidence of flight in the case; and the court should either have instructed the jury to disregard such argument, or else have granted an appropriate motion for a mistrial.

4. It was error in the present case for the court to charge the jury that flight might be considered as a circumstance of guilt, for the reason that the agreed brief of evidence in the record fails to show anything upon which to base such a charge.

Submitted April 17, — Decided June 13, 1905.

Accusation of larceny.    Before Judge Humphreys.    City court of Moultrie.    February 27, 1905.

*Walter A. Way* and *James Humphreys*, for plaintiff in error.
*T. W. Mattox, solicitor*, contra.

CANDLER, J.    1.  By an act approved December 27, 1890 (Acts 1890–1891, Vol. II, p. 575), the General Assembly incorporated the town of Moultrie, in Colquitt county.    The act approved December 16, 1895 (Acts 1895, p. 257), purported in its title "to reincorporate the town of Moultrie as the City of Moultrie, to confer additional powers on said corporation, and to codify, amend, and supersede all previous acts incorporating the town of Moultrie, and grant a new charter to said town, under the name of the City of Moultrie." On November 13, 1901, an act was passed establishing the city court of Moultrie, and on November 20, 1901, the General Assembly passed "an act to create a new charter for the City of Moultrie, in the county of Colquitt, and for other purposes." On the call of this case in this court, a motion was made to dismiss the writ of error, "upon the ground that a bill of exceptions will not lie from the city court of Moultrie to this court, because Moultrie had not been made a city prior to the establishment of the

city court therein." It is contended by counsel for the defend-
ant in error, that the act of 1895 did not have the effect to
change Moultrie from a town into a city and clothe it with
the powers of a city; that not until the passage of the act of
November 20, 1901, which was subsequent to the passage of
the city-court act, did Moultrie become a city; and that there-
fore, the court in question having been established in a town
and not a city, no writ of error will lie to this court. We can
not agree with counsel in this contention. The act of 1895
evinces very plainly the legislative intent that the town of Moul-
trie shall cease to exist and the City of Moultrie come into
being from the date of its passage. The purpose of the act as
stated in its title is " to reincorporate the town of Moultrie as
the City of Moultrie," etc. The fact that the title also sets
forth the intention to "supersede all previous acts incorporat-
ing the town of Moultrie, and grant a new charter to *said town,"*
do not indicate, in our opinion, an intention that the charter is
to be granted to it as a town, especially in the face of the ex-
press purpose that Moultrie is to be reincorporated as a city.
The italicised words were perhaps loosely used but in view of
the very evident intention of the act, which throughout is in
harmony with its title, this inaccuracy will not be allowed to
defeat its purpose.

What we now hold is in no sense in conflict with the deci-
sion of this court in the case of *Savannah R. Co.* v. *Jordan,* 113
*Ga.* 687. It was there held that " a place once incorporated
by an act of the General Assembly as a town will not become
one of the cities of this State until there is a legislative enact-
ment expressly declaring that such place is a city; and the
mere fact that in different legislative acts referring to such town
it is sometimes designated as a 'city' will not make it a munic-
ipal corporation of the character indicated by that term." The
act of 1895 did not casually and inaccurately refer to Moultrie
as a city,—it expressly repealed the act by which it was incor-
porated as a town, and reincorporated it as a city. It came
up to the full measure of the requirement laid down by the
decision in the *Jordan* case. See, in this connection, *Sessions*
v. *State,* 115 *Ga.* 19. It follows that the motion to dismiss the
writ of error must be overruled.

2. When the evidence had closed, the court stated that five minutes would be allowed to each side for argument. Counsel for the accused protested, and asked for further time, stating that he could not do justice to his client in the time allowed. The court then stated that ten minutes would be allowed to each side, and counsel for the accused again protested, asking for further time. The court replied: "All right, Major, go ahead, and I will see." Counsel then proceeded with his argument, and, after speaking for eleven and one half minutes, closed, not having been ordered by the court to stop, though the clerk had been instructed to stop him at the end of fifteen minutes. This action of the court is assigned as error, "as it deprived the defendant of the right to have the evidence and issues fully and clearly presented to the jury." In misdemeanor cases, counsel are entitled as a matter of right to thirty minutes for argument. Civil Code, § 5637. Upon a proper showing it is error to refuse to extend this time. *Chance* v. *State*, 97 *Ga.*, 346. Certainly, then, any limitation which curtails the time allowed for argument to less than thirty minutes is cause for a new trial. Nor can it be said that the fact that counsel closed his argument in less than twelve minutes is evidence that his client was not injured by the improper limitation put upon him. Naturally, the knowledge that he would be required to stop speaking at the end of fifteen minutes would lead him to hasten through his argument, so as to cover as much ground as possible. We are clear that the ground of the motion now under discussion was well taken, and that a new trial should have been granted.

3. The solicitor, in his argument to the jury, made use of the following language: "I know defendant was guilty, or he would not have fled from Mr. Hartsfield at Norman Park." Thereupon counsel for the accused made a motion for a mistrial on the ground that this was an improper argument, and in his motion for a new trial he assigns as error the refusal to grant a mistrial. There can be no doubt that this argument was improper, and that the motion for a mistrial should have been granted, or the solicitor rebuked and the jury instructed to disregard such argument. The evidence fails to show flight on the part of the accused, and therefore for the solicitor to

state his knowledge, or opinion, to the jury, based upon what he may have known to be a fact, but which was not proved, was not proper.  It is unnecessary for us to discuss this question at length, for Mr. Justice Cobb, in his opinion in the case of *Broznack* v. *State*, 109 *Ga.* 514 (3), has fully stated the law in regard thereto.  See also 1 Enc. Dig. Ga. Rep. 504.

4. The case made out by the State was substantially as follows: The accused was in the employment of the proprietor of a cleaning and pressing room in Moultrie.  One Hartsfield sent his overcoat to the establishment to be cleaned and pressed.  Two or three days before this time there was a pair of kid gloves in one of the pockets of the overcoat, but shortly after the coat was returned Hartsfield missed the gloves.  When the overcoat was sent to the pressing room, the proprietor turned it over to the accused to clean and press, while he went out on other business.  When he returned he saw a pair of kid gloves on the dresser, and asked the accused where they came from ; to which the accused replied that he had found them on the street.  The accused remained in his employ but a short time after — just how long the evidence does not disclose.  Some three or four weeks after getting his overcoat back from the presser, Hartsfield was at Norman Park, in Colquitt county, and hired a team to go a little way into the country. The accused was sent to drive the team, and while driving he wore gloves which Hartsfield recognized and identified as the gloves which had been in his overcoat pocket just prior to the time the coat was sent to the cleaner.  Hartsfield told the accused that they were his gloves, and that he ought to charge him ten dollars for them ; but that if the accused would pay him $2.50, he would not prosecute him.  " He agreed," says Hartsfield in his testimony, " to pay me on his return to Norman Park, but he never did, although I waited where he told me, and he did not come back to me and pay me for the gloves."  The accused offered no evidence.  The court charged the jury as follows : " You take the evidence in this case as given by the witnesses, and determine his guilt or innocence.  You may consider all the evidence.  The court charges you that flight may be considered as a circumstance of guilt."  We are clear that the latter part of this charge was error, for the reason that there was nothing that could in any way be distorted into evidence of flight on the part

of the accused.    The fact that he left the employment of the proprietor of the cleaning and pressing room shortly after Hartsfield's overcoat was sent there to be cleaned and pressed certainly did not constitute a flight, especially in view of the fact that there is nothing in the evidence to indicate the length of the interval between these two occurrences.    Nor was the failure of the accused to keep his promise to pay Hartsfield for the gloves in any sense a flight.    The charge referred to was necessarily harmful to the accused in its tendency, and was cause for a new trial.

The remaining grounds of the motion are without merit. Those which we have discussed, however, constrain us to reverse the judgment refusing a new trial.

*Judgment reversed.    All the Justices concur, except Simmons, C. J., absent.*