23109. GRIFFIN *v.* THE STATE.

DECIDED JULY 7, 1933.

*R. W. Smith Jr.,* for plaintiff in error.

*Robert McMillan, solicitor-general,* contra.

GUERRY, J. The defendant was convicted of the offense of manufacturing liquor, and he excepts to the judgment overruling his motion for a new trial. The evidence discloses substantially the following: There was a still, located and destroyed by the officers, around three hundred yards from the defendant's house. The officer who destroyed the still testified that liquor had been made there a few days prior to the raid. There were tracks (which were unidentified) from the still to a corn patch and on to the defendant's house. The State's witness testified: "There was a well that was about 15 steps from a corn patch, and the travel all came from the still back to his house, and came up through his corn patch. . . The tracks we saw were men's tracks. There was a path leading from his house to a little government road, and the travel leaving this still come into that path, but they were scattered out, there was no other path leading away from the still except to the defendant's house. . . I wouldn't call it a path, but there was some travel." It was shown that the corn patch in question was jointly planted by the defendant and a negro; and that the negro used the same path to the corn patch. The State's witness testified: "There is a negro's house away back this side of the defendant's but we passed his house long before we got to the defendant's house. I don't know who lived there at that time, but there was some negro lived in there by the name of Bob, but I don't know where he is now; I understand that he is in the chain-gang; and he said he had a corn patch over there also, and I guess this negro used the same path and pasture." With reference to the corn patch the other witness for the State testified: "The defendant told me at the time we were there and right after this still was cut down that this corn patch between his house and the still had been planted by him and this negro named Barnes." There was evidence by a witness for the State that a small quantity of malt was found in the defendant's barn. A witness who testified for the defendant said that the negro's house was just as close to the still as that of the defendant. "There are some roads in and about that still, but I didn't see any pathway. The still is closer to two other roads than it is to the pathway, and it is closer to both of these roads than the

road that went by Griffin's house. Both of these roads are public roads. This negro's house is about as close to the still as the defendant's house is. The State's witnesses testified that the defendant was not put under arrest that day, but promised to come to Gainesville the next day and make bond, which he did not do, and it was necessary for them to "slip" up on him the next night at his home in order to apprehend him. The defendant denied having any connection with the still.

The judge charged the jury as follows: "I charge you this principle of law, and in so doing I do not intimate whether or not any flight has been shown in this case. You alone are the judges of whether or not there has been any flight shown in the case, and if there has, you determine just what inferences you will draw from that circumstance, if that circumstance exists. But if you find there has been flight, if any, and similar acts, if proven, from which an inference of guilt may be considered by the jury, but flight, if any, is subject to explanation: the weight to be given to it or whether the jury will draw a consciousness of guilt or not, is for the jury. It is for the jury to determine whether the flight of the defendant, if any such has been proven, was due to a sense of guilt or for other reasons, and if for any other reason no inference hurtful to the defendant should be drawn." The defendant in his motion for new trial excepts to this charge, for the reason that there is no evidence to authorize the same. We think the point is well taken. Although the judge expressly said in his charge that his charging on the law of flight did not mean that there had been flight proved in the case, we think that in the instruction calling this law to their attention the jury might construe circumstances as flight which under the law are not considered as such. There was no evidence of flight on the part of the accused. The fact that the accused did not come to Gainesville the next day and give bond as he had promised he would do certainly could not be considered as flight. The fact that the accused was absent from his home all the afternoon is not an unusual circumstance in this day of financial strife and could not be considered as flight. It was shown that he returned home that night, at which time he was apprehended. Although the statement of the officers was that they had to "slip" up on him at night, there was no evidence to warrant such a statement. There

was no evidence that he had left his own vicinity or had attempted to conceal himself or run when they came for him that night. In *Jones* v. *State,* 123 *Ga.* 129 (51 S. E. 312), the court said: "We are clear that the latter part of this charge was error, for the reason that there was nothing that could in any way be distorted into evidence of flight on the part of the accused. The fact that he left the employment of the proprietor of the cleaning and pressing room shortly after Hartsfield's coat was sent there to be cleaned and pressed certainly did not constitute a flight, . . nor was the failure of the accused to keep his promise to pay Hartsfield for the gloves in any sense a flight." In that case the defendant had promised to return to a certain town and pay the prosecutor for the gloves alleged to have been stolen. We think the court erred in giving this charge and that a new trial should be granted. The court therefore erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*