## BLOUNT CARRIAGE AND BUGGY COMPANY *v.* WARE.

Applying to the allegations of the plaintiff's petition the familiar rules of law relating to the liability of a master for failing to warn a servant of abnormal and extraordinary risks attending the work he is called on to perform, the court below properly declined to dismiss the action on demurrer.

Submitted March 3,—Decided May 18, 1906.

Action for damages. Before Judge Reid. City court of Atlanta. May 20, 1905.

The Blount Carriage and Buggy Company was named as defendant in a petition filed by Edgar Ware, who sustained personal injuries while in its service as foreman of its crating-room and as brazer, on October 10, 1904, and who seeks to hold the company liable in damages to him because of alleged negligence on its part. The narrative given by him of the circumstances leading up to and bringing about his injury is substantially as follows: In the capacity of brazer, he brazed rubber tires on the wheels of vehicles manufactured by the company, in which occupation he had been engaged for a number of years. Up to a short time before the date of his injury, his employer had furnished him with a brazing machine, in which the necessary heat was generated by a gasoline flame. With this machine he was perfectly familiar; he knew how to operate it and understood the risks incident to its use. Just prior to October 10, the company discontinued the use of the gasoline machine and introduced a machine for brazing which generated the necessary heat by acetyline gas, a machine of which he had no previous knowledge and with which he had never had any experience. He was required to use this machine, without being given any instructions by his employer as to the method of using it or being informed as to the dangers incident to its use. He was merely told how to charge it. When it was installed by the defendant, it was found to be defective, in that it leaked; that is to say, the gas escaped. The defendant made an effort to repair it, and did repair it, by using beeswax and paint to stop the leak; and having thus repaired it, plaintiff was directed to use it, which he did. In a few days he discovered it was leaking again, and he was directed to stop the leak by using beeswax and paint. He followed these directions and stopped the leak in the same way in which the machine had previously been fixed. While in the discharge of

his duties on October 10, he undertook to braze a tire, first charging the machine by putting into it a substance which his employer had told him was calcium carbide, and then proceeding to use the machine as he had done before, which was very similar to the way the old machine had been used. He turned on the gas and lighted the burner at the end of a small rubber hose connected with the gas generator, and began to blow the flame, by the use of a foot-bellows connected with the burner, for the purpose of fusing the ends of the wires in the rubber tire; but, finding the heat insufficient to braze, he was proceeding to hang up the hose with his left hand, where it was usually hung, and in the usual manner, and to turn off the gas with his right hand, when the machine exploded with great violence. So violent was the explosion that his right arm was seriously injured and rendered permanently useless. With respect to the cause of his injury the plaintiff alleged, that the gas generator was out of repair and in a defective, unsafe, and damaged condition, which fact was known to his employer; that plaintiff had reported to the company that the generator was leaking, and was given instructions to remedy the defect by stopping the leak with beeswax and paint, which he did, but that this method was wholly inadequate and unfit for the purpose, though he did not know this to be true at the time. The company had never in any manner instructed him as to or notified him of the dangers of the generator and the gases produced thereby, the only instructions given him being directions as to how to charge the generator. Acetyline gas is a most dangerous, explosive, inflammable and combustible gas; its characteristics were not, however, known to plaintiff before his injury, and he was wholly inexperienced with the machine in which this gas was used, and did not know the risk incident to the use of such a machine when it was in good repair, or how to use it so as to avoid its dangers. Nor, being ignorant of the character of the gas generated, did he know that the defective condition of the machine rendered its use most dangerous and hazardous. The specific acts of negligence charged against the defendant company were, (1) that it "failed to instruct petitioner as to the use of said machine; (2) that defendant put petitioner to work with a machine which was charged with a most dangerous, inflammable, and explosive gas, which rendered said machine most dangerous, whether in good order or defective, in the hands of an

inexperienced operator, without warning him of its dangers; (3) that said defendant knew said machine was defective and the method of repairing it was not suited to render it safe, and directed petitioner to use it when said defendant knew, or ought to have known, it was dangerous; (4) that the defendant, knowing it was dangerous, failed to warn petitioner thereof and inform him of the character of the gas generated by the said machine and that the same was highly explosive."

The defendant demurred generally, and raised the following specific objections: The petition shows that plaintiff had equal means with the defendant of knowing the condition of the machine, the nature of the gas generated thereby, and all the facts complained of. He does not allege what, if any, specific act of negligence on the part of the company was the proximate cause of the explosion and his consequent injury, nor what was the precise cause of the explosion, nor that it was brought about by improper instructions given him as to how to charge the machine; and the plaintiff does not allege any legal or sufficient reason for not knowing that the gas was highly dangerous for the reasons stated, nor that the negligence on the part of the company complained of was the proximate cause of the injury. One of the paragraphs of the petition was specially demurred to on the ground that the plaintiff failed to point out in what manner the alleged defects in the machine rendered it dangerous and hazardous, or to show that these defects were the proximate cause of the injury. The demurrers were overruled, and the defendant excepted.

*Joseph W. & John D. Humphries* and *Peeples & Jordan,* for plaintiff in error. *P. H. Brewster, Jr.,* contra.

EVANS, J. (After stating the facts.) The demurrer speaks the truth when it says that the petition shows the plaintiff had equal means with the defendant of knowing the condition of the machine with which he was working; but the demurrer is not well taken, in so far as it assumes that the plaintiff had equal means of knowing the nature of the gas generated and all other facts related in the petition respecting the danger of using the machine. On the contrary, the pleader expressly asserts that the plaintiff was ignorant of the character of the gas generated, and of the fact that the defective condition of the machine rendered its use most dangerous, a fact which was actually known to his employer; and certainly the

plaintiff does not allege himself out of court by setting forth circumstances showing that he had equal means with his employer of knowing, and ought to have known, that acetyline gas was so highly explosive, inflammable, and combustible that extraordinary precautions had to be observed to prevent its escape while the machine was being used.   That the injury was caused by the explosion of gas escaping from the machine because of its defective condition is made sufficiently clear to put the defendant on notice of what the plaintiff claims was the proximate cause of his injury; and, we think, a casual reading of the petition is all that is necessary in order for the defendant to grasp the idea that the specific charge of negligence upon which the plaintiff bases his right to a recovery is that his employer, without informing him as to the nature of acetyline gas and warning him of the peculiar hazards incident to the use of a machine generating that highly explosive gas, negligently directed plaintiff to use a machine with which he was unfamiliar, which was defective and which had been repaired in a manner known to his employer not to be suitable to remedy its defects and render its use safe.   It is true, as pointed out in the demurrer, that the plaintiff does not allege that his injury was brought about by improper instructions given him as to how to "charge" the machine; but this afforded no reason for dismissing his suit.   The gravamen of his complaint is, not that any information given him led to his injury, but that his employer failed to instruct him how to use the machine with safety to himself, or even to warn him that the use thereof in sound condition subjected him to a peculiar and unusual peril, and furthermore was guilty of the affirmative and negligent act of putting him to work with a machine which the master knew was more than ordinarily dangerous because in a defective and unsafe condition.

The demurrer raises but two questions which really call for any discussion, (1) whether, under the facts alleged, the master was under any legal duty of warning the servant as to the nature of the gas generated by the machine which he was called on to use, and (2) whether the plaintiff offers any sufficient legal excuse for not knowing that the use of a machine which generated that kind of gas was under any and all circumstances more or less dangerous, and attended with great hazard when the machine was in a defective condition.   The master had discarded machines in which the neces-

sary heat was generated by a gasoline flame, and had introduced a new machine, with which the plaintiff was unacquainted, and which he alleges was "most dangerous, whether in good order or defective, in the hands of an inexperienced operator," because it generated acetyline gas, a gas which was most dangerous and explosive. When an employer adopts a new instrumentality or introduces unusual substances or agencies which his servant is required to handle, the latter is entitled to warning of all incident risks which are abnormal or extraordinary and which are, therefore, not of such a kind that the servant is chargeable with an adequate comprehension of their nature and extent, and of the proper means by which to safeguard himself. 1 Labatt on Mas. & Serv. §240. "The master is bound to exercise ordinary care . . in furnishing machinery . . reasonably safe for all persons who operate it with ordinary care and diligence." Civil Code, §2611. He can not escape liability by exercising passive good faith in adopting new appliances without inquiring into the question whether they are unusually hazardous. "If there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows, *or ought to know,* he must give the servant warning in respect thereto." *Ibid.* The servant assumes only "the ordinary risks of his employment;" and if injured because the master failed to warn him of dangers attending the use of appliances with which he is called on to work, of which dangers the master knew or ought to have known, the servant is entitled to damages, if he "did not know and had not equal means of knowing, . . and by the exercise of ordinary care could not have known thereof." Id. §2612. The petition filed in the present case is defective, in that, while alleging that the master failed to give warning of the unusual hazards incident to the employment of acetyline gas to generate heat, it fails to allege that the master knew or ought to have known the peculiar nature of that gas. At the same time, it is to be observed that the demurrer does not point out this defect. If, as matter of law, the master was not chargeable with knowledge that acetyline gas was an explosive which was unusually dangerous, as compared with the gas produced by the machine in which gasoline was used, then it follows that the plaintiff was not bound to take notice that a machine in which acetyline gas was generated was extraordinarily dangerous. He negatives

the idea that he was chargeable with knowledge of the nature of that highly explosive gas when he alleges that the peril to which it exposes an inexperienced operator is abnormal. Under the allegations of his petition, it is fair to conclude that neither he nor his master could, by the exercise of ordinary prudence, have become acquainted with the extra-hazardous character of the risks incident to the use of the new machine which the master had adopted. But the plaintiff in terms charges that his master was sufficiently well acquainted with the nature of the gas generated by it to know that the machine, if defective, in that it "leaked," could not be rendered safe by the means employed to stop the leak, but nevertheless knowingly subjected the plaintiff to the extraordinary risk of using a defective machine, of the danger of which he was ignorant. If this be true, then the master displayed a negligent disregard of the safety of the plaintiff; and he is entitled to recover, unless he ought to have known that the defective machine subjected him to grave peril. He knew of the defect, but not of the peril. As the peril is alleged to have been not obvious and open, but due to the peculiar properties of a dangerous gas not theretofore employed in prosecuting the work the plaintiff was engaged to perform, we are not prepared to hold that the hazard was one of which he ought to have known. "In considering whether the servant's action is barred on the ground of knowledge, the material question is not whether he was aware of the conditions which produced the danger, but whether he understood the danger itself." 1 Labatt on Mas. & Serv. §240a. That the master undertook to assure him that the defect could be remedied in the manner specified by the former should also be taken into consideration. Ibid. §446 et seq. Our conclusion, therefore, is that the case is one which should be submitted to a jury, both as to the charge of negligence made against the defendant and as to the question whether or not the plaintiff exercised ordinary care.

*Judgment affirmed. All the Justices concur.*