## 107. ATLANTA & BIRMINGHAM AIR-LINE RAILWAY *v.* McMANUS.

1. Although a copy of the charge of the court has been approved and filed, the trial judge has the power to change the same, by correcting errors made in transcribing.

2. The testimony of a witness to a fact of which he swears he has personal knowledge is not rendered inadmissible by the further showing that he also knows it from hearsay.

3. "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him." When the object is to show bias, great latitude should be allowed.

4. Where a witness had testified on a former trial, as to one of the most vital questions in the case, that it would have been impossible for the deceased to have fallen from a car door if certain bars had not been removed from across the same, and, on the trial under review, testified

that he had studied over the matter and found it to be different; whereupon he was being subjected to the following cross-examination: "Q. 'What do you now say, what do you swear now, do you take it back or stand to what you swore?' Ans. 'I will take it back. I will leave it to any railroad man, he could easily have gone under it or over it, because it is in the center of the cab-door.' Q. 'So you take it back, do you?' Ans. 'I take that question back I answered there.' Q. 'Mr. Vance, when you swore it before, were you swearing the truth?'"; and opposing counsel interrupted the examination with the following objection: "That is a totally improper question;" upon which the court ruled, "Yes, I don't think that is proper: *Held*, that counsel was within the limits of legitimate cross-examination.

5. In a suit against a railway company for the homicide of an employee through the alleged negligence of a fellow-servant, an instruction to the jury, that if the plaintiff proves that the death of the deceased employee was occasioned by the railway company in the running of its cars, and nothing further appears, a prima facie case of liability is made out, is erroneous.

(*a*) Such an error is not rendered harmless by giving in a subsequent portion of the charge the correct law on the subject, unless the court so plainly instructs the jury that the charge first given is incorrect as that the jury can not be confused and misled.

6. In a suit against a railway company for the homicide of an employee, in order to authorize a recovery the plaintiff must cause it to appear both that the defendant was negligent and that the employee was free of fault; but when the death of the employee is caused in the running of the train, either one or both of these elements, according to the nature of the case, may be prima facie supplied by the proof of the injury being so received.

7. Under the statute in this State, an employee of a railway company does not assume the risk of injury from the negligence of a coemployee, and it is not error for the court, in a proper case, so to instruct the jury.

8. Although an employment may be fraught with certain known dangers, yet if, notwithstanding those dangers, the conditions are such that the servant by the exercise of due care may perform the duties of the employment without probable injury, the servant, in assuming the risks of these dangers by entering or remaining in the employment, does not assume the risk of an independent, unexpected supervening danger produced by the negligence of the master, or, in cases of railway companies, by the negligence of a fellow-servant.

9. It is erroneous for the judge, in his charge, to assume or to instruct the jury that certain things, not directly made so by law, are or are not negligent.

Action for damages, from city court of Polk county—Judge Irwin. May 19, 1906.

Argued February 12,—Decided February 25, 1907.

*Brown & Randolph, Janes & Hutchens,* for plaintiff in error.

*Janes & Hunt, Bunn & Trawick, Arnold & Arnold,* contra.

POWELL, J. A recovery for something over $11,000 was obtained by Mrs. McManus against the defendant railway company on account of the death of her husband, T. F. McManus, who was killed while in the service of the company as a conductor on a construction train. It was contended on behalf of the plaintiff that her husband, while standing in the end door of the cab at the rear of the train, which was backing slowly across a trestle, discovered the presence of a number of laborers on the trestle, about three hundred feet away, and caused a slow-down signal to be given to the engineer, who, instead of merely gradually slowing down, threw on the air-brakes in full emergency, thus causing the train to stop instantly with a sudden jerk, whereby McManus was hurled forward through the door and out upon the track, with the result that his neck was broken. The company contended, that the conduct of the engineer was not negligent; that the stop was not more sudden than was required under the exigencies; that the jerk was not greater than was ordinarily to be expected in a construction train; that the company had furnished the car with an iron rod known as a "grab iron," which extended horizontally across the door, near the center, and that the proximate cause of the conductor's injury was the fact that he had removed this protection or had caused it to be removed. The further facts necessary to an understanding of the decision will be referred to in the opinion. In addition to assigning error upon the overruling of a motion for a new trial, the plaintiff in error also excepts to the fact that after the trial judge had caused a copy of his charge to be filed, under his written approval, he caused certain material changes to be made in it. The judge certifies that these changes were necessary in order to make the copy speak the truth.

1. It is the duty of the judge to make the record speak the truth. If by inadvertence he approves as true that which in fact is not true, it is not only his privilege but his duty to make the necessary corrections.

2. One of the assignments of error relates to an objection made to the testimony of a witness who gave evidence as to the amount of wages being earned by the plaintiff's husband at the date of his death. He stated that he knew this fact of his own knowledge, but also stated that he had seen his salary checks. The objection is that the testimony is hearsay. A witness may know a fact both

from personal knowledge and from hearsay; in which event the testimony is admissible.

3, 4. A witness named Vance testified for the plaintiff. An examination of his testimony as set out in the record reveals many indications of bias towards that side of the case. Upon his testimony the plaintiff chiefly relied. On a former trial of the case, and also in a written statement made by him, he had said that if the "grab iron" had not been removed the conductor could not have been thrown from the car. Upon the trial under review he stated that the presence of the "grab iron" would not have prevented this result. Upon cross-examination the following ·colloquy occurred: "Q. 'What do you now say, . . do you take it back or stand to what you swore?' Ans. 'I will take it back. · I will leave it to any railroad man, he could easily have gone under it or over it, because it is in the center of the cab-door." Q. 'So you take it back do you?' Ans. 'I take that question back I answered there.' Q. 'Mr. Vance, when you swore it before, were you swearing the. truth?' " It was here that the court sustained an objection that the cross-examination was being improperly conducted. Generally the latitude to be allowed counsel in cross-examination is a matter of sound discretion vested in the trial court, but the right should not be abridged. Our Civil Code, § 5282, which says, "The right of cross-examination, thorough and sifting, belongs to every party as to the witnesses called against him," announces a rule of ancient standing in courts of justice. Rapalje (Law of Witnesses, § 245 (3) ), after stating the discretion vested in the trial court, says: "There is no uniform rule governing the matter, greater liberty being allowed when the witness shows partisanship than when he evinces impartiality; and it requires a strong case to justify a reversal for the allowance of too much latitude on the part of the cross-examiner. The discretion particularly extends to the range of a cross-examination in disparagement of the character of a witness; and this without putting the witness to his claim of privilege. The court may postpone the cross-examination to a subsequent stage of the cause, or permit a party, after resting his case, to cross-examine his adversary's witnesses, or call others. Where a witness has betrayed bias, partiality or corruption, this discretionary power will be exercised in extending the latitude of the questioner, and a most searching

cross-examination will be allowed." We think that counsel for the defendant had the right to compel the witness to fully disclose to the jury his change of front as to the question, and also to press him with the cross-examination, with the view of disclosing not only his bias, but also the effects which this bias might have in coloring his testimony. Although, out of deference to the wide discretion allowed the trial judges in these matters, we would not reverse the judgment on this ground, we are constrained to hold that counsel had not exceeded proper limits in his cross-examination of the witness. *Mitchell* v. *State,* 71 *Ga.* 129 (6), 157.

5. At the beginning of his instructions to the jury, the court charged: "Gentlemen of the jury, when the plaintiff shall have shown the killing, proved to your satisfaction that her husband was killed by the railroad in the handling of its cars, as alleged in the petition, that makes out, if nothing further appears, if she does not in that proof go further and show that the death occurred as the result of the negligence of her husband, she would be entitled to recover. In other words, the killing proven, nothing else appearing, as I said, that makes out a prima facie case, and the plaintiff, unless something further appears, would be entitled to recover such an amount as you think under the evidence plaintiff has proven." This charge is clearly erroneous as applicable to the case at bar. The true rule, of course, is that before an employee in such a case raises a presumption of negligence against the company he must show his own freedom of fault, in addition to showing the injury. While it is conceded by counsel for defendant in error that this charge is error, it is contended that the court afterwards cured the error. Prior to the conclusion of the charge the attorney for the plaintiff interrupted the judge and said to him: "If your honor will allow me, I desire to call attention to an inadvertence in your charge, and ask you to correct it. In the beginning of your instructions your honor charged the jury that if the plaintiff showed the killing, to the jury's satisfaction, by the handling of the cars, that such proof alone raised the presumption of the defendant's liability and made out a prima facie case for the plaintiff. Your honor by inadvertence omitted to charge, as a qualification and addition to this rule, that no presumption arose against the company unless the plaintiff had first proved that the deceased was without fault, or had proved that the

defendant was at fault." To which the court replied: "I have tried to do it in every case. It must appear that he was without fault. I had intended to do it. That is the law. It must appear that he was without fault, although it may appear that the defendant was at fault or was negligent. It must in any event and at all times appear that he was without fault, and that he could not have avoided the consequences of the injury to himself, by the exercise of ordinary care and diligence. You will understand that that applies to the case, gentlemen, and under all conditions of the case." We are not prepared to say that this did not cure the error, though we must confess our doubts as to this. Where an erroneous rule is charged as to a material issue, the error is not rendered harmless, by the subsequent statement, or even reiteration, of the correct rule, unless the judge expressly calls the attention of the jury to the incorrect statement and substantially retracts it. *Georgia R. Co.* v. *Hicks,* 95 *Ga.* 305; *Brush Electric L. & P. Co.* v. *Wells,* 103 *Ga.* 512 (1); *Augusta Ry. & El. Co.* v. *Smith,* 121 *Ga.* 32; *Duncan* v. *State,* ante, 118.

6. Exception is taken to the following excerpt from the charge: "The jury are instructed that an employee who sues a railroad company for injuries, after proving the injury, may recover on proof of either of two facts. After proving the injury, if he proves that he was free from negligence, he can recover; or if, after he proves the injury, he proves that the servant or agents of the company were negligent, he can recover." This statement, standing alone and apart from the context in which it is used, might be regarded as erroneous; for, in a certain sense, the plaintiff must make both things appear,—first the company's negligence, and also his freedom from fault. However, by proving that he was injured in the running of the cars, he thereby raises a presumption which supplies for him the proof of one or the other, or both, of these additional elements, as the case may be. In case the injury is occasioned as the result of an act from which the plaintiff is disconnected, the presumption supplies proof of both these elements. *Central R. Co.* v. *Kelly,* 58 *Ga.* 113; *King* v. *Seaboard Air-Line Ry.,* ante, 88, and. cit. In case the injuries are sustained by the alleged negligence of other servants, in the performance of an act with which plaintiff was connected, the presumption supplies only one of these elements in his favor. *Wes-*

*tern & Atlantic R. Co.* v. *Vandiver,* 85 *Ga.* 470. The rationale of this latter phase of the rule is that when the plaintiff proves that he was injured in the operation of the train, the law presumes that the injury was occasioned by the negligence of one or more of the railway company's servants operating the train; and since the plaintiff himself is one of the defendant's servants engaged in that act, the presumption of negligence attaches equally to him as to his fellow-servants; so that he must go further and show either that he was not at fault, thereby throwing the presumed blame to his fellows, or that some other servant was negligent, thereby relieving himself from the imputation. When we consider the entire context in which the charge quoted appears, we find that the language as a whole amounts to a reasonably apt statement of the correct rule.

7. Under statute in this State, the common-law rule exempting the master from liability to a servant for injuries inflicted by a fellow-servant has been modified so that it is not applicable to employees of railway companies. Civil Code, §2610, is as follows: "Except in case of railroad companies, the master is not liable to one servant for injuries arising from the negligence or misconduct of other servants about the same business." The exception in this section is due to Civil Code, §2323, which, in defining the liability of railway companies for injuries, provides: "If the person injured is himself an employee of the company, and the damage was caused by another employee, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to the recovery" Of course a fellow-servant may be guilty of contributory negligence by voluntarily placing himself within, or by remaining within, the range of the fellow-servant's negligent conduct; and in a certain sense it may be said that in such cases he assumes the negligence of the fellow-servant; but a laconic and not altogether inexact statement of the substance of the two code sections cited above may be expressed in the words, "The employee of a railway company does not assume the risk of injury from the negligence of his coemployees;" and in cases where such a statement of the rule is not likely to prove misleading, and is coupled with explicit instructions as to the element of the servant's contributory negligence, there is no error in so charging the jury.

8. Some of the grounds of the motion make complaint of charges wherein the jury was, in substance, instructed, that while the conductor in this case assumed the risk of the ordinary dangers connected with the operation of the construction train, he did not thereby assume the risk of the negligence of other employees engaged in the work. This principle, in the abstract, is accepted as correct by the courts of this State. *Lawhorn* v. *Millen & Southern Ry. Co., 97 Ga. 742; Southern Cotton Oil Co.* v. *Dukes, 121 Ga. 787; Blount Carriage & Buggy Co.* v. *Ware, 125 Ga. 571; Southern Cotton-Oil Co.* v. *Gladman,* ante, 259. As is said in the case last cited, "The assumption by the servant of the known ordinary risks, even of a dangerous employment, does not carry with it the assumption of an unknown supervening extraordinary hazard occasioned by the master's negligence." Of course, to make this rule as stated directly applicable, we must remember that in cases of railway companies the negligence of the fellow-servant is regarded as negligence of the master, for most purposes. In the practical application of the rule above stated, it must not be overlooked that if the dangers accompanying the employment are brought about in whole or in substantial part by the negligence or wrongful conduct of the employee injured, and these dangers caused the injury or contributed thereto, such servant can not be regarded as blameless, so as to be allowed to recover; although the supervening negligence of the master or of the fellow-servant may justly be regarded as the chief efficient agency in causing the injury.

9. Error is also assigned on several of the court's charges which approach the border line of error, and in some cases step over, in the respect that in these instructions the court states or assumes that certain conduct does or does not amount to negligence. The charge, "Even if you believe that the occupation in which the deceased, Mr. McManus, was engaged was dangerous, the jury are instructed that merely to engage in a dangerous occupation is not by itself negligence," approaches the border line; and the charge, "If you believe, from the evidence, that notwithstanding the fact that there was no bar in the door, Mr. McManus would not have been injured if the train had been handled with ordinary care; and if you believe that the death of Mr. McManus was caused by the negligence of the engineer in jerking the train, or in otherwise

negligently handling the cars, then the plaintiff could recover in this case, provided, as I have charged you, and always have charged you, that he could not have avoided the consequences of such negligence to himself," steps over. The expression, "was caused by the negligence of the engineer in jerking the train," is justly open to the criticism that it assumes that the jerking of the train would be negligent. If this expression had been accompanied, either directly with, or in reasonably proximate relation with an instruction that it was a question for the determination of the jury as to whether the jerking of the train, if any such jerk occurred, was, under the circumstances, negligent or not, the meaning given to the language of the trial judge might be regarded as unwarranted. However, we have carefully searched through the entire charge of the court, and find that nowhere did he squarely present to the jury the issue as to whether the alleged conduct of the engineer amounted to negligence, under the circumstances; on the contrary we think it may justly be stated that a juror of ordinary intelligence would be led to believe, from the charge as a whole, that if the engineer stopped the train suddenly and with a jerk, such conduct would in law be assumed to be negligent. This error comes at a crucial point in the case, and though, were it not for its existence, we would probably, out of our great reluctance to disturb verdicts for minor errors or irregularities, affirm the judgment, we must hold that for this injustice to the defendant we should grant a new trial. Probably the strongest defense available to the railway company, under the circumstances of this transaction, is the contention that, in view of the sudden discovery of the presence of a number of persons on the trestle a short distance away, it was not negligent for the engineer to apply the air-brakes in the fullest emergency, even though a violent and sudden jerk to the train was the natural result of such a course. Such a defense, predicated upon the engineer's exertions to save human life, would likely appeal most strongly to an ordinary jury, and the judge should not have slighted it, and especially should he not have used language in his charge capable of being regarded as assuming that such conduct was, as a matter of law, negligent. Our trial judges are allowed no latitude in these matters; they must not assume or declare that any given conduct, not amounting to violation of law, is negligent. As to these things our judges have been stricken

dumb by statute; and their very attempt to speak is made mandatory cause for a new trial. ·

The contention that the verdict is excessive seems not to be well founded; if the defendant was liable at all, the damage assessed by the jury seems to closely approximate the amount fairly justified by the proof. We would not disturb the verdict on the facts; but · for the errors pointed out above, a new trial must be granted.

*Judgment reversed.*