8137. HARDY *v.* ATLANTA AND WEST POINT RAILROAD COMPANY.

The court erred in directing a verdict for the railroad company upon its special plea that the plaintiff's husband was at the time of his death engaged in interstate commerce.

DECIDED JUNE 18, 1917.

Action for damages; from Troup superior court—Judge Freeman. February 11, 1916.

*Mooty & Andrews, Meadors & Wyatt, S. Holderness,* for plaintiff. *Dorsey, Brewster, Howell & Heyman, A. H. Thompson,* for defendant.

GEORGE, J. Mrs. Hardy filed suit against the Atlanta & West Point Railroad Company. On the trial of the case the court, at the conclusion of the testimony, directed a verdict in the company's favor on its plea that the plaintiff's husband was at the time of his death engaged as an employee of the defendant in interstate commerce. In substance the evidence upon this issue was as follows: The plaintiff is the widow of Sim Hardy. Sim Hardy was killed by an interstate passenger-train of the defendant on September 22, 1912, in the company's yard in the city of La-Grange, Troup county, Georgia, within a few feet of an engine which he was employed to watch. He was employed by the defendant to watch a switch-engine from six o'clock in the evening until six o'clock in the morning, and it was his duty to turn water from the tank into the engine and keep the steam on the engine, so that it would be ready for service when the servants of the defendant took charge of it in the morning. It was also his duty to throw coal into the tender from a coal-car that stood by it at night, and to keep all intruders away from the engine. The

engine that he was employed to watch was not operated out of the city of LaGrange. It was parked, or stationary, at a point in the defendant's yards at LaGrange from six o'clock in the evening until six o'clock in the morning. It was not the duty of the deceased to operate or repair the engine. During the day the engine in question was employed in the switch-yards. On the date of the homicide and for a month prior thereto, and for several days subsequent thereto, the freight handled by this engine in LaGrange was ninety per cent. interstate and ten per cent. intrastate. The engine, during the day, was used for the purpose of switching and transferring both interstate and intrastate freight, substantially in the proportions indicated above. It was also used to deliver cars loaded with interstate freight to connecting carriers. Plaintiff's husband was killed between the hour of six p. m. and the hour of six a. m. According to the testimony offered by the plaintiff, the deceased was at his post of duty on his engine, when he saw a pedestrian fall upon the defendant's main-line track a short distance away. He ran to the rescue of the pedestrian, slipped and fell, and was killed by the interstate passenger-train of the defendant. According to the brief filed by counsel for the defendant, it was the defendant's contention that the plaintiff's husband was either drunk or asleep upon the main-line track at the time its passenger-train struck and killed him. The evidence in support of this contention was omitted from the brief as immaterial on the question presented. To the direction of the verdict the plaintiff excepted.

This suit was brought by the widow of the deceased, and not by his personal representative, and can not be maintained if the Federal employer's liability act of April 22, 1908 (35 Stat. 65, c. 149, Comp. Stat. 1913, § 8657), governs. By the terms and provisions of that act, the right of action, if any, vests in a personal representative, in a case where suit is brought to recover for the death of one employed in interstate commerce. If, therefore, the deceased husband of the plaintiff was an employee of an interstate carrier, and if his duties were interstate commerce in character at the time of his death, the action must abate. The effort of the plaintiff is to show the Federal act does not apply; the contention of the defendant is that the Federal act does apply, and that the evidence demanded the verdict directed in favor of the defendant

upon its special plea. Counsel for both parties seem to attach some importance to that feature of the evidence, offered by the plaintiff, going to show that the deceased, at the time of his death, was engaged in an act of humanity in attempting to rescue another person, who was in imminent peril of being run over and killed by the interstate passenger-train of the defendant. The evidence in the present record would warrant the jury in finding that the deceased met his death while engaged in an attempt to rescue another, but if it be conceded that this contention is the truth of the case, it does not, in our view of the matter, change the character of his employment or the nature of the service which he was actually performing at the time of his death. If he were an employee of an interstate carrier and if his duties were interstate commerce in character at the time of his death, his conduct in responding to the dictates of humanity and in attempting to rescue another person from peril would not destroy the nature of his employment. If he were in the employ of an interstate carrier, but if his duties were not interstate commerce in character at the time of his death, the fact that he was killed by an interstate passenger-train of the defendant, under the circumstances appearing in the evidence in behalf of the plaintiff, would not bring the deceased within the operation of the Federal employer's liability act.

Was the husband of the plaintiff employed in interstate commerce within the meaning of the Federal employer's liability act, while engaged in the duty of watching the switch-engine in the defendant's yard at LaGrange, under the circumstances appearing in the evidence? In so far as the words of the act are material here, it declares that "every common carrier by railroad, while engaging in commerce between any of the several States, . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," if the injury results wholly or in part from the negligence of the carrier or any of its officers, agents, or employees. It is essential to the right of recovery under the act not only that the carrier be engaged in interstate commerce at the time of the injury, but also that the person suffering the injury be then employed by the carrier in such commerce; and so it results, where the deceased employee is engaged in intrastate commerce, or in what is not in any proper sense commerce at all, that the party entitled to sue for the value

of his life, in case of his death, must look for redress to the laws of the State wherein the injury occurs. It is to be noted that the death of the employee in this case did not result from the violation of some Federal statute, such as the safety-appliance acts.

What are the facts upon which the judge directed a verdict in behalf of the defendant upon its affirmative plea? The deceased was employed to watch and care for an engine, the property of- an interstate carrier, while the engine was parked, or stationary, in the yards of the defendant company at LaGrange, Georgia. He did not operate the engine, nor was the engine in use at any time during his hours of service. He was not required to repair the engine in any particular, but his duties were confined to such things as throwing coal into the tender, turning the water from the tank into the engine, and keeping the steam on so that the engine might be ready for use at the time when his duties ended. It was an instrumentality used in both interstate and intrastate commerce before and after his death. At the time of his death and during the whole time when he was on duty the engine was not engaged in commerce at all. The engine is not to be considered as upon the same footing as a bridge, a switch, or a part of a track of an interstate carrier, because the whole track of an interstate carrier is at all times an instrument employed in interstate commerce. The most that can be said is that the engine in question was an instrumentality that had been used in both interstate and intrastate commerce, and therefore that it was an instrument that had been used in interstate commerce. There is nothing in the record to indicate that the carrier expected to use the engine, after the night of the homicide, in interstate commerce, or in any commerce whatever. It is true that the evidence shows that the engine was, for a few days after the death of the employee, used as an instrument in both interstate and intrastate commerce. That the defendant company intended to, and in fact did subsequently to the homicide of plaintiff's husband, use the engine in interstate commerce alone would be of no relevancy.

It would be useless to enumerate the cases dealing with the question here involved. Many authorities are available in support of the contentions of both parties to this suit. However, the language of Justice Holmes, speaking for the Supreme Court of the United

States in the case of Minneapolis & St. Louis Railroad Co. *v.* Winters, 242 U. S. 353 (37 Supreme Ct. 170, 61 L. ed.), would seem to be in point: "The plaintiff was making repairs upon an engine. This engine 'had been used in the hauling of freight-trains over the defendant's line . . which freight-trains hauled both intrastate and interstate commerce, and it was so used after the plaintiff's injury.' The last time before the injury on which the engine was used was on October 18, when it pulled a freight-train into Marshalltown, and it was used again on October 21, after the accident, to pull a freight-train out from the same place. That is all that we have, and is not sufficient to bring the case under the act. This is not like the matter of repairs upon a road permanently devoted to commerce among the States. An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

Unless the verdict directed by the court was demanded by the evidence, the judgment must be reversed. If the evidence, with all reasonable deductions therefrom, authorized a contrary verdict, a new trial must be ordered. We rule that the evidence, with all reasonable deductions therefrom, did not authorize the court to conclude as a matter of law that the plaintiff's husband was at the time of his death engaged in interstate commerce.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*