## 11803. PAYNE, agent, v. DEMOTT.

1 Questions as to negligence on the part of a master in giving an order to his servant to perform a particular service, and peril in obedience on the part of the servant, and as to the exercise of ordinary care by the servant in discovering the danger that might result from compliance with the order, where there is a conflict in the evidence, are for exclusive solution by the jury, and where there is any evidence to support the verdict this court cannot interfere.

2. Where, in a suit against a common carrier for personal injuries to an employee, the petition contains two counts, one based on the State law and the other on the Federal employer's liability act, and a verdict in favor of the plaintiff is based expressly on the latter count, the evidence must show that at the time of the injury the carrier was engaged in interstate commerce, and that the injured employee was also then employed in interstate commerce. In the instant case the evidence negatives these two essential facts.

DECIDED FEBRUARY 15, 1921.

Action for damages; from city court of Thomasville — H. H. Merry, judge pro hac vice. August 9, 1920.

This action was brought against the director-general of railroads, operating the Atlantic Coast Line Railroad. The allegations of the plaintiff's petition as amended were in substance as follows: He was employed by the defendant as a boiler maker, and it was his duty to do general repair work on the defendant's boilers when ordered to do so by his superior officers. On July 30, 1919, at 10 o'clock p. m., he was directed by his superior officer, the night foreman of the defendant's shops, to do certain work on the boiler of engine No. 1280. It was the foreman's duty to have the steam of all boilers blown off and the boilers sufficiently cooled to make it safe to work inside the boilers before ordering the plaintiff to work therein. The boiler of this engine had not been blown off and sufficiently cooled to render it a safe place for him to work, but was so hot as to make it impossible for him to perform the required work without incurring serious personal injuries. He entered the boiler to perform his duties, and then discovered that the boiler was too hot, and came out, but as a result of the heat he was injured as particularly described. The foreman misled him in stating to him, when directing him to go into the boiler, that the engine was in proper condition for him to go into it, and that it had been standing there since 4 o'clock in the afternoon (the time then being 10 o'clock at night), when in truth the engine had been there and the fire removed therefrom not over forty minutes, and the boiler had not been sufficiently cooled to make it a safe place to work. It was alleged that this fact was known to the defendant, or could have been known by the exercise of ordinary diligence, while it was not known to the plaintiff and could not have been known by the exercise of ordinary care, and that the plaintiff did not have equal means with the defendant of knowing of the dangerous condition of the boiler. The petition contained two counts, substantially the same as to the allegations stated above, one based upon the State law, and the other upon the Federal employer's liability act, it being alleged that engine No. 1280 was engaged in interstate commerce, and that the plaintiff was engaged in interstate commerce while working on the boiler of the engine. A demurrer to the petition was overruled, the trial resulted in a verdict for $4,000 on the count based upon the Federal employer's liability act; the defendant's motion for a new trial was over-

ruled, and the movant excepted to the rulings stated. In this court it was insisted that the judgment should be reversed for two reasons: (1) Because the plaintiff had equal means with the defendant of knowing the dangerous condition of the boiler from its heat, and by the exercise of ordinary care might have known thereof, and therefore cannot recover for his injuries resulting from entering the boiler. (2) Because the evidence failed to show that the engine upon which plaintiff was working was engaged in interstate commerce, and therefore the plaintiff was not entitled to recover upon the count of the petition upon which the verdict was specifically found.

*Merrill & Moore, Bennet & Branch,* for plaintiff in error.

*Hay, Joiner & Hammond,* contra.

HILL, J. (After stating the foregoing facts). 1. The view we take of the second question makes it unnecessary to consider at length the questions of law arising on the demurrer and the liability of the defendant under the evidence. It is sufficient to state that in the opinion of this court the allegations of the petition set out a cause of action, and these allegations were substantially proved by plaintiff. The issues presented by the evidence, under the statutes of this State and the decisions of the Supreme Court and of the Court of Appeals, as to the questions of diligence and negligence, are for solution by the jury, and we cannot hold that there was no evidence to support the verdict. Civil Code (1910), §§ 3130, 3131; *Atlanta & Birmingham Air-Line Ry. Co.* v. *McManus,* 1 *Ga. App.* 302 (58 S. E. 258); *Southern Cotton-Oil Co.* v. *Gladman,* 1 *Ga. App.* 259 (58 S. E. 249); *Cherokee Brick Co.* v. *Hampton,* 16 *Ga. App.* 53 (84 S. E. 328); *Grant* v. *Royster Guano Co.,* 15 *Ga. App.* 758 (84 S. E. 161).

2. We think the evidence failed to show a case of liability under the Federal employer's liability act, and for this reason the verdict on that count was not authorized. Under this act it is essential to a recovery that at the time of the injury the carrier was engaged in interstate commerce, and that the injured employee was then also employed by such carrier in interstate commerce. It is conceded that the defendant was an interstate carrier. Was the plaintiff at the time of the injury employed by the carrier in interstate commerce? He insists that he was, because he was injured while working in an engine which was then

engaged in interstate commerce. He was injured on July 30, 1919, while working on engine No. 1280. The only evidence showing the use of this engine is contained in the train-sheet. This shows that this engine was a part of a work-train with limits entirely within the State of Georgia from July 1, 1919, to December, 1919. The only times during the period from July 1 to December 31, 1919, in which it was moving interstate was on August 2, when it ran as extra No. 1280 from Bainbridge, Ga., to Dothan, Ala., and on September 9, from Thomasville, Ga., to Montgomery, Ala. At the time the work was done on the engine by the plaintiff it had completed an intrastate trip and had been brought in for repairs. It was then what is known in railroad parlance as a "dead engine," having no fixed destination or work. It is fairly inferable from the evidence that the next trip the engine made after the plaintiff was injured was interstate, but this was on August 2, three days after the plaintiff had been hurt and after he had discontinued his work on the engine. Can it be said that this fact is enough to bring it under the rule announced by the courts on the subject now under consideration? The construction given to the interstate statute has been quite liberal in behalf of injured employees, but we have found no decision which goes to this limit.

The Supreme Court of the United States, in the case of Minneapolis & St. Louis R. Co. v. Winters, 242 U. S. 353 (61 L. ed. 358, 37 Sup. Ct. 170, Ann. Cas. 1918 B, 54), said: "The injury occurred while the plaintiff was repairing an engine. The engine had been used in interstate commerce before the injury, and was so used afterwards, but there is nothing to show that it was permanently or specially devoted to such commerce, or assigned to it at the time. *Held,* not a case within the Federal employer's liability act." In the opinion Mr. Justice Holmes used the following language pertinent to the point now under discussion: "An engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate, or confined to Iowa, as should

happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended upon its employment at the time and not upon remote probabilities or upon accidental later events. " This decision of the court of the highest authority on the construction of interstate statutes would seem to be conclusive in the instant case. In a decision of the Supreme Court of Oklahoma, in Chicago, R. I. & P. Ry. Co. *v.* Cronin, 176 Pac. 919, the court said: " It is contended that the judgment must be reversed for the reason that the trial court tried the cause as governed by the law of the State and not the Federal liability act, . . the theory of the company being that Cronin was engaged in interstate commerce because be was working on an engine which, when in service, pulled an interstate passenger-train. The engine had been taken out of service and placed in the shop for repairs. It was not being used in commerce of any kind; it was ' dead. ' The fact that the repairs had been made and the engine placed back in service in time to make the regular trip from Sayre, Okla., to Amarillo, Tex., does not necessarily mean that the engine was not out of service in the meantime. We cannot agree with the plaintiff in error that this broken-down engine was in interstate commerce at the time of the accident; indeed, it was not in commerce of any kind. It was ' dead, ' undergoing the repairs necessary to placing it in commerce. " In the instant case the engine when in service, before the repairs, had been engaged exclusively in intrastate commerce. In *Hardy* v. *A. & W. P. R. Co.,* 20 *Ga. App.* 303 (93 S. E. 18), this court followed the decision of the Supreme Court of the United States in Minneapolis & St. Louis R. Co. *v.* Winters, supra. In the *Hardy* case the plaintiff's husband, at the time of his death, was engaged in guarding for the night a switch-engine which on the day before had been engaged in interstate commerce and the day after was engaged in interstate commerce. His duties were to guard the engine, to put water and coal in it, and to keep up the fire so that it could be used as a switch-engine the next day in switching both interstate and intrastate commerce. This court held that when injured he was not engaged in interstate commerce.

Applying to the undisputed facts in the instant case the construction of the Federal statute made in the cases cited, it is clear that the plaintiff was not engaged in interstate commerce

at the time of his injuries, and therefore he was not entitled, by the express terms of the act, to the verdict. 35 Stat. 65, c. 149 (U. S. Comp. St. §§ 8657-8665).

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*