20677. POPE *v.* THE STATE.

DECIDED FEBRUARY 17, 1931.

*Norman Shattuck, Mann & Mann, John D. Pope,* for plaintiff in error.

*M. Neil Andrews, solicitor-general, Rosser & Shaw, Dean Owens,* contra.

LUKE, J.   D. F. Pope was charged in the first count of an indictment with forging a will, and in the second count with uttering and publishing as true the forged will; and was convicted on the second count only.   The bill of exceptions assigns error upon the sustaining of a demurrer to the defendant's plea in abatement and dismissing said plea, as shown by exceptions pendente lite; and upon the overruling of the defendant's demurrer to the indictment, as shown by exceptions pendente lite; and upon the overruling of his motion for a new trial.

1.   The plea in abatement alleges in substance that the indictment should be quashed because the sheriff, who was "marked on said indictment as the prosecutor," "picked up two grand jurors" who "acted on said indictment."   The plea in abatement does not allege that the tales grand jurors summoned by the sheriff were friends of the sheriff or even acquaintances; or that they had any interest in the sheriff; or that they had any ill-will towards the defendant; or that they had any personal interest in the prosecution of the defendant or the finding of the true bill against him; or that the defendant was harmed in any way; or that the defendant and his counsel did not know of the alleged disqualification of said grand jurors before the indictment was presented to the grand jury for consideration; or that the sheriff knew, at the time he summoned said two tales grand jurors, that the bill against the defendant would be presented to this grand jury for consideration.   The court properly sustained the demurrer and dismissed the plea in abatement.

The 1st and 3d grounds of demurrer to the indictment relate to

the first count thereof, and, as there was no conviction on this count, they will not be discussed.

2. The 2d ground of demurrer alleges that the second count of the indictment does not allege how the defendant uttered the forged will; that the allegations thereof are conclusions of the pleader; and that said count is not complete, because no copy of the alleged forged will is set out therein. An examination of the second count of the indictment shows that it is sufficiently explicit and substantially in the language of the statute. See Penal Code, § 232, necessarily construed in connection with § 231. Nor was the second count defective because of its failure to include a copy of the alleged forged will, since the first count embodied a copy of the alleged will and the second count virtually incorporated it by special reference to "the false, forged, altered and counterfeited will and testament set out and referred to in the preceding count." "Where an indictment charging forgery contains two counts, the first being complete within itself, including a copy of the instrument alleged to have been fraudulently forged and uttered, which is set out in full, and in the second count express reference to the instrument is made, thereby purporting to incorporate it into the second count, and thus charging all the substantial elements of the offense in the second count, the failure to set out the alleged forged instrument in the second count" will not render said second count subject to demurrer. *Durden* v. *State,* 152 *Ga.* 441 (110 S. E. 283). This question was adjudicated in *Pope* v. *State,* 41 *Ga. App.* 653 (154 S. E. 194). The demurrer to the indictment was properly overruled.

3. The first special ground of the motion for a new trial alleges that the verdict was inconsistent, repugnant, and contrary to law, in that the jury found the defendant not guilty of forging the will, and guilty of uttering and publishing said will knowing it to be forged. Whether the defendant forged the will or some one else did it, if the defendant knew that it was a forged will, and, so knowing, uttered and published it, a conviction of the latter offense, as set out in the second count in the indictment, would not constitute a repugnancy or inconsistency. This question also is adjudicated in *Pope* v. *State,* supra. See also *Hoskins* v. *State,* 11 *Ga.* 92, 95, and *Durden* v. *State,* 29 *Ga. App.* 548 (116 S. E. 41).

4. The second special ground of the motion for a new trial alleges that the court erred in refusing to grant a mistrial "in connection with the evidence of Tom Little" in reference to another alleged forged will, and that the testimony was prejudicial to movant. The ground discloses that when the witness failed to connect the defendant with the transaction referred to, the State's counsel voluntarily withdrew the testimony from the consideration of the jury, and the court then said to the jury: "I rule it out completely; you will not consider it in any way whatever, or for any purpose whatever; this witness's testimony is out completely. I charge you that under the testimony of this witness, it has absolutely no probative value whatever, so far as this case is concerned, and I charge you to disregard it completely, and, in so far as you can, eradicate it from your minds completely. It is ruled out in its entirety. You will disregard it completely." These instructions from the court certainly made it plain to the jury that they should not consider the testimony, Furthermore, the testimony of the witness in reference to the alleged forged will (other than the one named in the indictment) was probably not prejudicial to the accused, because the witness stated: "So far as I know I can't say he [the defendant] had any connection with that will." In the light of the testimony, and of the fact that it was withdrawn from the consideration of the jury, and of the court's instructions in regard thereto, there was no error in refusing to grant a mistrial.

5. The third special ground of the motion for a new trial alleges that the court erred in allowing a witness to testify as follows: "Prior to that day Mrs. Partain had approached me with reference to signing a paper. She said Mr. Wardlaw had not made any will and she could make one." This ground of the motion can not be considered by this court, since it is not complete and understandable without reference to the indictment and other parts of the record. Who is "Mrs. Partain" and who is "Mr. Wardlaw"? The ground fails to show who they are or their connection with this case.

6. The fourth special ground of the motion for a new trial alleges that the court erred in refusing to allow a witness to testify that the defendant had said: "I do not want to be mixed in anything crooked." This was a self-serving declaration, and "it is not, on the trial of a criminal case, competent to introduce in behalf of

the accused evidence of his own self-serving declarations." *Dixon* v. *State,* 116 *Ga.* 186 (2) (42 S. E. 357).

7. The fifth special ground alleges that the court erred in allowing a witness, who had remained in the court-room after the rule as to separation of witnesses had been invoked, to testify for the State. "On the trial of a criminal case, where the rule for the sequestration of witnesses has been invoked, the fact that one offered as a witness has heard the testimony given by other witnesses does not render his testimony incompetent; and the admission of the evidence of such a witness is not cause for a new trial." *Davis* v. *State,* 120 *Ga.* 843 (2) (48 S. E. 305); *Taylor* v. *State,* 132 *Ga.* 235 (2) (63 S. E. 1116).

8. The sixth special ground alleges that the court erred in overruling a motion for a continuance on the ground that the defendant was not physically able to go to trial or to assist or co-operate with his counsel in the preparation of his case. The ground shows that the defendant, who is a lawyer, had tried two divorce cases the previous week; and a practicing physician, appointed by the court to examine the defendant, testified in part as follows: "I find no organic trouble, no kidney trouble. Nervousness is all I can determine wrong with him. I did not discover anything wrong with his mental condition in talking with him. His mind is not dull and anything like that. He is just nervous, in my opinion. So far as his constitution is concerned, I do not see any reason why he should not be tried now. . . I took his temperature, his pulse, blood pressure, and examined his heart and lungs as well as his urine. I took a chemical analysis of his urine and found nothing wrong with it. It showed a normal specimen. It would not indicate trouble with his kidneys. I found no organic trouble. So far as I can determine he is physically all right. . . I think he would be in condition to properly confer with his counsel." It is perfectly natural that one of the defendant's standing, as shown by the record, would be nervous on the eve of being tried for forging a will and uttering and publishing it. In fact, in our opinion, he would not be a normal man if he were not somewhat nervous under such circumstances. The discretion of a trial judge in overruling a motion for a continuance, unless abused, will not be controlled by the appellate court, and in this instance it was not abused. *Oglesby* v. *State,* 121 *Ga.* 602 (5).

9. The seventh special ground alleges that the court erred in charging the jury as follows: "I charge you that if the witness himself could have been indicted or has been indicted either as principal or as an accessory, then and in that event he would be an accomplice. I charge you in this connection that one accomplice may corroborate another accomplice." To a question certified by this court in this case, to the Supreme Court, the latter court answered as follows: "One may legally be convicted of a felony, other than treason or perjury, where the only evidence directly connecting him with the offense charged is the testimony of an accomplice, and where the only corroboration is the testimony of other accomplices." For full opinion of the Supreme Court see 171 *Ga.* 655 (156 S. E. 599). Under this ruling there is no merit in this ground of the motion for a new trial.

10. There was ample evidence to support the conviction of the accused. The evidence of the two accomplices, who were witnesses to the will, fastened the crime upon the defendant beyond any doubt, and their evidence showed the defendant's knowledge that the will was forged; but there was abundant evidence, other than that of the accomplices, to show that the will was forged, and that the defendant knowingly uttered and published it thereafter. Members of the family of the deceased, who knew his signature, testified that he did not sign the will; the testimony of an expert on handwriting showed that the deceased did not sign the will; the fact that the will disposed of about three times as much property as the alleged testator owned tended to show that he did not make such a will; and the fact that the will named the defendant as executor, when the evidence showed that the deceased prior to his death had formed a dislike for the defendant, tended to show that the deceased did not sign the will. The evidence as a whole shows that the defendant was the hidden force behind the entire transaction. And as to the uttering and publishing, Judge W. L. Stansell testified: "I am serving in Walker county as ordinary. . . It [the alleged forged will] was presented for probate. D. F. Pope brought this will to my office, the defendant in this case. . . This petition signed by David F. Pope to probate in common form, Mr. Pope wrote after they got into the office. . . The defendant Pope was present when that was signed. . . The presentation of that will for probate took place in Walker county,

Georgia. I do not remember the hour Mr. Pope and those witnesses came to my office. . . I can't remember what Pope said when he brought the will and how it came to him. I can not say what he said more than he had the will of Buddy Wardlaw [the deceased]. . . It was all done by Mr. Pope."

The court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J. concur.*