## 32046.   LOOMIS *v.* THE STATE.

DECIDED DECEMBER 3, 1948.

*Homer Loomis Sr.,* for plaintiff in error.

*Paul Webb, Solicitor-General, J. Walter LeCraw, William Hall, William T. Boyd,* contra.

MacIntyre, P. J. 1. Demurrer. Ground one of the demurrer to the indictment alleges that the indictment and each of its counts are bad and unsustainable in law, in that no one of them charges the defendant with an act, or an attempt to do an act, which constitutes an offense at common law or a violation of any statute of Georgia. Ground two contends that the indictment and each of its counts are bad and unsustainable in law, in that no one of them charges that the defendant, in doing or attempting the acts specified therein respectively, was acting or purporting to act as a peace officer of the State of Georgia or any political subdivision thereof.

Georgia recognizes no common-law crimes as such, the Code embracing the entire field of criminal law and procedure; but Code § 26-4902 provides: "Any person who shall, without authority, exercise or attempt to exercise the functions of, or hold himself out to anyone as, a deputy sheriff, marshal, policeman, constable, or other peace officer or detective shall be guilty of a misdemeanor: Provided, that nothing in this Chapter shall be construed to interfere with the police powers grant-

ed to conductors of passenger trains, nor shall this and the preceding section apply in times of riot or unusual disturbance, or in other instances provided for by the law."

Each of the counts of the indictment accused the defendant with exercising, or attempting to exercise, the functions of, or with holding himself out as, one of the police officers designated by the Code section or other peace officer within its meaning; and each count alleged that the defendant was not a conductor of a passenger train, and that the time covered by the indictment was not a time of riot or unusual disturbance. Grounds one and two of the demurrer are not meritorious. See, in this connection, *Burke* v. *State,* supra.

Ground three of the demurrer contends that the indictment is bad and unsustainable in law in that, while it sets out five counts, each as charging a distinct and separate offense, the matters so charged in the several counts constitute but different phases or aspects of one offense; and contends that all the charges of the indictment should be embraced in one general count, not five separate counts.

With regard to similar misdemeanors covering a period of time within the statute of limitations, which is two years, the prosecution may elect to charge the offender with several particular offenses, alleging each in separate counts with such particularity as to make it unmistakably clear that the occurrence embraced by any one count is a separate and distinct transaction from that alleged in any other count; or it may elect to charge a general offense which would cover in one count the whole period of two years prior to the filing of the accusation. The prosecution here elected to charge a particular congruous offense in each count, and the words in each count, "this offense herein alleged being a distinct and separate transaction from those set forth in other counts of this indictment," make substantial proof of the facts alleged in each count essential to identify the particular offense described in that count as a separate and distinct violation of the law. *Martin* v. *State,* 73 *Ga. App.* 573 (3, 4, 5, 6, 7) (37 S. E. 2d, 411); *Morgan* v. *State,* 119 *Ga.* 964 (47 S. E. 567). This ground of the demurrer is not meritorious.

2. Plea of former jeopardy. The court sustained the oral demurrer of the State to the plea of former jeopardy to each of the counts of the indictment. The plea to each count alleged in effect that the defendant had already been tried and convicted of riot on evidence including a recital of the same state of facts complained of in each count of the indictment, respectively; the only difference in the offense for which the defendant was sought to be tried the second time from the offense for which he was first tried being that in the latter the facts were recited to charge in the particular count a general plan to enforce the peace, whereas in the former they were given in evidence to establish a conspiracy to break the peace.

The offenses are separate and distinct. A person may in one transaction so conduct himself as to be guilty of both of these crimes. "In such a case the rule in *Blair's* case, 81 *Ga*. 629, [7 S. E. 855], is to be followed. It is there said that if the evidence required to convict under the first indictment would not be sufficient to convict under the second, without proof of an additional fact which was necessary to constitute the offense, former jeopardy could not be pleaded in bar of the second indictment." *McIntosh* v. *State,* 116 *Ga*. 543, 544 (42 S. E. 793). See also *Harris* v. *State,* 193 *Ga*. 109 (1) (17 S. E. 2d, 573, 147 A. L. R. 980); *Clay* v. *State,* 4 *Ga. App*. 142 (60 S. E. 1028). The plea of former jeopardy in the instant case itself sufficiently points out the additional fact which is necessary to constitute proof sufficient to convict under the instant indictment; and the court did not err in sustaining the demurrer thereto.

3. Ground 1. "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." Code, § 38-1705. "A substantial denial of this right is good cause for the grant of a new trial. . . However, the scope of the cross-examination of a witness rests largely within the discretion of the judge." *Pullman* v. *State,* 196 *Ga*. 782, 788 (28 S. E. 2d, 139). It is the duty of the court "to allow a searching and skillful test of his [the witness's] intelligence, memory, accuracy and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted. This is a matter that necessarily belongs to

and abides in the discretion of the court. . . . There must be allowed some degree of skill, if not sharpness, in conducting cross-examinations, because a witness, however fair and honest and truthful, may not be careful enough, and it is to the interest of justice to expose the blundering of a witness, as well as his wilful departures from veracity. A jury ought to be made to know what character of mind they have before them on the witness-stand, whether they have a careful, cautious witness, or one who is disposed to take things on trust. That is quite essential. But the court is there, watching the proceedings, and acquainted with all the surroundings; it is proper to leave such a question to the discretion of the court." *Harris* v. *Central Railroad*, 78 *Ga.* 525, 534 (3 S. E. 355).

On his cross-examination, the defendant's witness, Jack Price, testified: "I went in the organization in the last part of September or the first part of October and I got out in November, it was in the last part of November, I guess, or the first part of November. I just quit. There was no special reason why I quit, I just went out and got a job and settled down and got married. I haven't got time to mess around with them. I remember testifying in the case here that began on February 9th. [Referring to the Burke trial under the same indictment.]" It would not be reversible error to permit the witness to be asked if he, at a designated time and place, to wit, during the former trial of a codefendant on the ninth day of February of the same year, had not testified that the reason he left the Columbians was that he disagreed on religion with the defendant. However, if the witness replied in the *affirmative*, it would be error to have permitted him, over proper objection, to further answer that "*I read the Bible quite a bit and they* [referring to the defendant and another member of the Columbians] *don't quite believe in the Bible.*"

If the answer italicized had been elicited by a question which was made the subject of a proper and timely objection, it should have been excluded, or, if it had already been admitted, upon motion it should have been ruled out, because what particular religion either of them embraced, or whether they embraced any religion at all, was immaterial and irrelevant and should not have been injected into this case.

The circumstances surrounding the presentation in evidence of the italicized testimony of the witness are not clear from the record; and since the case is being reversed on the exceptions taken on other grounds and will, of course, go back for a new trial, it is unnecessary to rule more specifically upon this ground of the motion.

4. Ground 2. The plaintiff in error states that, before a conviction could be legally had, it was necessary for the State to prove the absence of riot or of general disturbance during the period of time involved in the case; but he contends, on the ground that such was a conclusion of the witness, that it was error for the court to permit, over objection, officer Newton to testify that between September 15 and November 6, the time involved, there was no riot or unusual disturbance in the City of Atlanta which made it necessary for the chief of police to call for help in protecting lives and property.

The officer testified in effect that he knew that there was no such riot or disturbance during the time stated. This was a question of fact as to which the police officer was competent to testify if he, of his own knowledge, knew that of which he testified. *Pride* v. *State,* 133 *Ga.* 438 (1), 440 (66 S. E. 259).

5. Ground 3. A newspaper reporter, Tom Ham, was placed upon the witness stand and testified that during the period of time involved in the trial he went out to the Columbian headquarters and there interviewed Loomis, who was the secretary of the organization. He further testified as to certain acts of Loomis while in his presence and as to the conversation which he had with Loomis at that time in regard to the Columbian organization and its purposes. Among the parts of the conversation testified to by Ham was the following: "I asked Mr. Loomis definitely for a statement of his reactions or reply to Chief Hornsby's statement to the effect that the Atlanta Police Department would not tolerate any interference in policing Atlanta. He told me he proposed to continue his patrols and said their instructions were to arrest negroes found loitering in white sections, and hold them for the police."

The defendant objected to the first sentence of this quoted testimony on the ground that it was hearsay evidence. The

court stated: "It is not introduced for the purpose of proving what the chief said. It is introduced for the purpose of showing what the defendant said."

This testimony of the witness was a circumstance casting further light upon the activities and the purposes of the Columbian organization, one of which, according to other testimony in the record, was to create disturbances and to pretend that it was necessary for them to take over in one section of the city by patrolling and otherwise, and then to gradually take over in the entire municipality, the county, the State and finally the nation, which procedure or method seems to have been patterned after what the Columbians understood to have been the method used by the Nazis in taking over Germany. The statement by the newspaper reporter of what the chief of police said was not introduced for the purpose of proving the truth of the facts stated by the chief; but it was introduced for the purpose of establishing the fact of the question which was asked Loomis by the reporter, for the purpose of establishing the mise en scène of, and to explain to the jury the meaning of, the answer of the defendant, which was decidedly relevant and admissible to show a further circumstance in establishing the purpose of the Columbian organization.

6. Ground 4. During the trial, after the State had completed the direct examination of a witness, and before the defendant's counsel had undertaken any cross-examination of the witness, the defendant, in person, addressed the court as follows: "Your Honor, I understand in my own defense I have a right to cross-examine the witness." To which the court replied: "No, sir, not as long as you have a lawyer." The defendant's counsel (his father, Homer L. Loomis) then asked the court: "Is it your opinion that the defendant cannot participate?" The Court: "Where he has counsel representing him, only counsel ask the questions." . . . Mr. Loomis: "I will read . . to Your Honor paragraph four of section one of article one [of the Constitution of Georgia]. . .: 'No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State in person, by attorney, or both.' " . . The Court: "I am going to rule this: just as long as

your father is your counsel and attorney representing you, only he can ask the questions. If you reach the state [that] you have no counsel and do not desire counsel appointed for you, I will permit you to conduct your own defense." . . The Defendant: "I am the only one in a position to know when the witnesses get on or off the truth or when certain points are left ￫ out in their cross-examination, in their direct examination, and it is not that I am dissatisfied with counsel, but I have to talk ˙ with him and confer with him and half the time he doesn't know what is right and what is not and it takes up the court's time when he asks about a thing that is wrong, that is not wrong, when it was the truth, and otherwise I have to direct him." The Court: "You have the right to confer with him any time you want to. . . I have ruled this, Mr. Loomis, and I think [that] you as a lawyer know what the law is. With regard to the defendant representing criminal cases, the defendant has the right to come into court and defend himself. Where he selects counsel to represent him [before] the court, the case is tried by counsel, he is represented by counsel, and since he has counsel, the court will only permit counsel for him to ask questions and argue the case. Now if he hasn't got counsel and doesn't want the court to appoint him a counsel, then he can conduct his own defense; but I am not going to permit a mix-up — start off by your representing him as counsel, and then stop and let him step in and represent himself and then permit you to have anything further to do with the case." Mr. Loomis: "It is a vital right that my son has the right under the words, 'or both,' to participate in the trial of this case. . ." The Court: "Have you any authority of any court that has held that where the defendant has counsel representing him in court as his own counsel, that it violates the constitutional right not to permit him to cross-examine witnesses or let him speak to the jury?" Mr. Loomis: "No, Your Honor, because Georgia, as I understand it, is unique in this respect." The Court: "Let me suggest counsel ought to acquaint the court with any decisions in this State that hold to the contrary on what I am ruling now."

The Constitution of 1945, art. I, sec. I, par. IV (Code, Ann.,

§ 2-104), provides: "No person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State, in person, by attorney, or both." In *Moyers v. State*, 61 *Ga. App.* 324, 328, (6 S. E. 2d, 438), it was decided by this court: "If the defendant has counsel to conduct his cause, he may suggest any question to them which he considers fit to be put; or if he takes the conduct of it upon himself he may have the benefit of their private suggestions upon matters of fact, and as soon as any point of law arises they shall be readily heard upon it." This right, however, is not unqualified, for in the same decision we held: "Confusion and perplexity would necessarily arise if a cause were to be conducted at the same time both by counsel and by the party himself. . . The trial court has the undoubted right to hold all trials to their proper and legitimate channels. It is not only his legal right, but his duty as well, to see that the court's business proceeds in an orderly and decorous manner." This court, therefore, held that the trial court did not abuse its discretion in refusing to allow the defendant to also, or further, cross-examine a witness who had already been cross-examined by the defendant's counsel. And in *Roberts v. State*, 14 *Ga.* 18, 21, it was held by the Supreme Court: "[The defendant] appeared in person and by his counsel. He was entitled to conduct the examination, and if he had asked leave to do so in the outset, the request, no doubt, would have been granted." Judge Nisbet, speaking for the court there, further stated: "He [the defendant] did not think proper to make the request, but devolved that service upon his counsel. Having arranged with counsel that one of them should conduct the examination, the court held him to it. Had he not held him to it, he would have compromitted the order, decorum, and efficiency of the court [this being a case in which the defendant's counsel had cross-examined in full the State's witness when the defendant requested permission to further cross-examine him]. The presiding judge in the courts of this country has the power to prescribe the manner in which business shall be conducted — a power which is not absolutely certain [that] the legislature can take from him, unless it is exercised in such a way as to

involve a deprivation of right. All rights in a court of justice are of a necessity enjoyed through forms of procedure — indeed, the rules of the court, and the ever-present power of the judge, to maintain order — to prevent unnecessary consumption of time, and to discipline the action of the court in ways and at times, and under circumstances which do not admit (in a judge's opinion!) of specification, are indispensable to the fullest enjoyment of every right. What Judge *Starke* did in this case, was nothing more or less than to enforce the usual rule of the court, *as to the manner in which the prisoner should exercise his constitutional right of defense in person."*

It thus appears that the constitutional provision here sought to be invoked by the defendant is plainly subject to the inherent power of the court to prescribe the manner in which the business of the court shall be conducted and to preserve the order and decorum of the trial to the furtherance of justice, but that power of the court cannot be "exercised in such a way as to involve a deprivation of right." See also, in this connection, Code, § 24-104 (4) ; Rule 88 of the Superior Courts of this State (Code, § 24-3359; Code, Ann., § 24-3388) ; *Carr* v. *State,* 76 *Ga.* 592, 596, *Hoskins* v. *State,* 11 *Ga.* 92, 97, *Owens* y. *State,* 11 *Ga. App.* 419 (5) (75 S. E. 519), and also *Duncan* v. *State,* 71 *Ga. App.* 841 (2) (32 S. E. 2d, 435). The discretion of the trial judge in regulating the conduct of counsel, parties, and the witnesses, and in prescribing the manner in which the business shall be conducted, including the manner in which the prisoner shall exercise his constitutional right of defense in person, is broad and is ample to enable him in any case to effect the purposes for which it is inherently his; but his discretion is not unlimited, for it must not be abused and it may not be exercised in such a way as to involve a deprivation of right.

This discretion of the trial court in assuming the general superintendence and control of the litigation before it is a point of extreme delicacy with which we are reluctant to interfere, and interference will not be had unless there appears in the case something to demand imperatively the corrective interposition of this court. We do not here deem it essential to attempt any definition, if any such were possible, of the boundaries of the

right of the prisoner to conduct his own defense in conjunction with his counsel or of the discretion of the court in prescribing the manner in which this right is to be exercised; for where, upon the question raised, the trial judge has a legal discretion to exercise and passes judgment on the question, resting his decision solely upon a point of law and affirmatively showing from the language of the ruling that he failed to exercise any discretion whatsoever in the premises, the rule of discretion does not apply; and if the legal ground on which the judgment was rested was erroneous, a reversal will result. Cf. *Marion County v. McCorkle*, 187 *Ga.* 313, 314 (2) (200 S. E. 2d, 285); *Hill v. Wadley Southern Ry. Co.*, 128 *Ga.* 705 (7) (57 S. E. 795); *Ballard v. Waites*, 194 *Ga.* 427, 429 (2) (21 S. E. 2d, 848); *Stribbling v. Georgia Ry. &c. Co.*, 139 *Ga.* 676 (3) (78 S. E. 42); *Spires v. Wright*, 147 *Ga.* 633 (2) (95 S. E. 232); *Fears v. State*, 102 *Ga.* 274, 275 (5-a) (29 S. E. 463).

Considering the language of the trial court as a whole — in response to the defendant's request that he be permitted to cross-examine the hostile witness, "No, sir, not as long as you have a lawyer," in response to counsel's question as to whether it was the court's opinion that the defendant can not participate, "Where he has counsel representing him only counsel can ask the questions"; after hearing read that section of the Constitution which provides that no person shall be deprived of the right to prosecute or defend his own cause in any of the courts of this State in person, by attorney, or both, and after other colloquy, "I am going to rule this: just as long as your father is your counsel and attorney representing you, only he can ask the questions. If you reach the state [that] you have no counsel and do not desire a counsel appointed for you I will permit you to conduct your own defense"; after other colloquy: "I have ruled this, Mr. Loomis, and I think that you as a lawyer know what the law is. With regard to the defendant representing criminal cases, the defendant has the right to come into court and defend himself. Where he selects counsel to represent him [before] the court, the case is tried by counsel, he is represented by counsel, and since he has counsel, the court will only permit counsel for him to ask questions and argue the

case"; and after still further colloquy: "Have you any authority of any court that held that where the defendant has counsel representing him in court as his own counsel that it violates the constitutional right not to permit him to cross-examine witnesses or let him speak to the jury?" . . "Let me suggest counsel ought to acquaint the court with any decisions in this State that hold to the contrary on what I am ruling now" — it is palpably clear that in ruling on the question presented the court did not rest its decision upon its right in the exercise of a sound legal discretion to conduct the judicial proceeding before it in the furtherance of an orderly rendition of justice, but based its judgment and ruling upon an erroneous legal premise, that, when the defendant has once retained counsel to represent him, he will not thereafter *in any case* be permitted, so long as he retains counsel in the case, to examine the witness or to actually conduct the cause in whole or in part as to any other matter connected therewith. The *Roberts* and *Moyers* cases, supra, clearly establish that such is not the consequence of the law; and we think that in so ruling the court committed reversible error.

7. Ground 5. The cross-examination of the witness Childers covers thirty pages of the record, and his recross-examination covers eighteen pages, the entire cross and recross-examination occupying a large part of an afternoon and the succeeding morning in the course of the trial itself. The cross-examination of the witness relative to his association and relationship to the Anti-Nazi League in New York and certain of its members fills a full five pages of the record. In the course of the cross-examination as to this matter it was revealed that after the witness withdrew from the Columbian organization, he was taken to New York by the Anti-Nazi League [the purposes of which organization were entirely at variance with the purposes of the Columbians], and there maintained at their expense, and was then returned to Atlanta and there maintained at their expense up to the time of the trial. He testified that while on this trip he related to them the whole story of what he knew about the Columbians, both good and bad. At this time the witness was asked by counsel for the defendant, "Tell the

jury anything you told them in favor of the Columbians? Whereupon the court stated: "I am not going into what he told them."

It is contended by the defendant that this ruling of the court was error in that it deprived him of a valuable right of cross-examination to show that, in addition to the other facts already revealed which went to the discredit of the witness, the witness, though claiming to be impartial in the relation of his story to the Anti-Nazi League, in fact did not tell them a single favorable fact concerning the Columbians, and thus to further reveal to the jury the unreliability and partiality of the witness's testimony, in that it was a part of a scheme to disgrace, defame, and malign the defendant and the Columbians.

It is apparent that the answer to this question, if it had been allowed to be given, may have plunged the court into a trial of collateral issues which were unnecessary in order to determine the material questions in the case. The witness may have answered an endless number of things told by him to the Anti-Nazi League which he might have *concluded* were favorable to the Columbians. In regard to some of these statements, counsel for the defendant may have wished to elucidate in illustrating further the credit entitled to be given the testimony of the witness, or he may have wished to attempt to impeach the witness as to some of them; and the State may have wished to rebut the testimony upon some one or more of these collateral issues by going into the entire conversation between the parties at the time the statement in regard thereto was made, and perhaps into the relevant circumstances under which such statement was made in order to show its true meaning or significance, thus plunging the court still further into the trial of more and more collateral issues unnecessary to determine the material issues of the case.

The cross-examination of the witness in general, as well as the particular part of it relating to the Anti-Nazi League and giving rise to the question here in issue, covered a wide range; and while the defendant has the right of cross-examination, thorough and sifting, yet the cross-examination must end somewhere, and the discretion to end it is vested in the trial judge.

"The rule is that 'the trial judge had a discretion to control the right of cross-examination within reasonable bounds, and an exercise of this discretion will not be controlled by a reviewing court unless it is abused.'" *Aycock* v. *State*, 62 *Ga. App.* 812, 815 (10 S. E. 2d, 84).

Under the facts and circumstances here appearing, among which are the broad scope of cross-examination which was allowed by the court and the broad terms in which the disallowed question was couched, taking in the whole scope of whatever the witness may have told the Anti-Nazi League in regard to the Columbians, we do not think that the court abused its discretion in refusing to allow the question to be propounded to the witness.

8. Grounds 6 and 7. It is contended that the rulings of the court in these grounds deprived the defendant of the right on cross-examination to inquire into the motives of a witness in giving testimony contradictory of statements made upon a former trial.

If upon the cross-examination of a hostile witness it is shown that the witness has testified to a contradictory statement on a former trial of a codefendant, and the attention of the witness is called to the alleged contradictions and the contradictory statements are admitted by him, it is within the legitimate scope of the right of cross-examination to ask the witness upon which occasion he was testifying to the truth. *Atlanta & Birmingham Air-Line Ry.* v. *McManus*, 1 *Ga. App.* 302 (4), 305 (58 S. E. 258); *Mitchell* v. *State*, 71 *Ga.* 129, 157; *Jackson* v. *Pruitt*, 38 *Ga. App.* 617, 618 (3) (144 S. E. 921). And on cross-examination it is always permissible to sift the motives of the witness and to show, if possible, any reason other than a purpose to tell the truth which may consciously or unconsciously actuate him in his testimony. *Glover* v. *State*, 15 *Ga. App.* 44, 45 (6) (82 S. E. 602).

A witness may be discredited by showing that his impartiality is affected by motives arising from interest or partisanship, bias, or prejudice. The hostility of the witness may be shown by the witness himself or by extrinsic evidence, but the evidence must be direct and pointed and not indirect and uncertain; and the

unfriendly feeling must be shown to exist at the time of the trial. Rapalje, Law of Witnesses, 337, § 202. The extent to which a witness may be cross-examined is ordinarily a matter of discretion with the presiding judge. " 'There is no uniform rule governing the matter, greater liberties being allowed when the witness shows partisanship than when he evinces impartiality; and it requires a strong case to justify a reversal for the allowance of too much latitude on the part of the cross-examiner. The discretion particularly extends to the range of a cross-examination in disparagement of. the character of a witness; and this without putting the witness to his claim of privilege. The court may postpone the cross-examination to a subsequent stage of the cause, or permit a party, after resting his case, to cross-examine his adversary's witnesses, or call others. Where a witness has betrayed bias, partiality or corruption, this discretionary power will be exercised in extending the latitude of the questioner, and a most searching cross-examination will be allowed.' " *Atlanta & Birmingham Air-Line Ry. v. McManus*, 1 *Ga. App.* 302, 305 (supra). But the court has the right to require that the questions be direct and positive and in a proper form, not argumentative, which will call for a clear and direct answer, thus expediting the trial of the case and avoiding the injection into the case of collateral issues not material to the determination of the cause.

With the rules thus stated the questions presented in these grounds will not likely arise upon another trial and it is unnecessary for us to rule upon them here.

9. Ground 8. Error is assigned here upon the refusal of the court, on objection of State's counsel, to allow Childers to answer the following question, "Now, if you were doing that for those people in New York, wouldn't you also likewise lie for them just as you lied for the Columbians?" The court ruled: "That is an improper question. I won't permit you to ask it."

The question, as propounded to the witness, was argumentative and improper, and the court did not err in refusing to allow it. It may also be said that it is more appropriate to address the subject-matter of this question to the jury than to the witness under cross-examination.

10. Ground 9. This ground assigns error on the refusal to allow the witness Densmore on cross-examination to answer questions which were in substance: (1) Did not the defendant tell the witness that the Columbian organization had no intention of antagonizing the police department? (2) Did you (the witness) not so testify in the Burke trial? and (3) Did he not tell you that, when they found anything wrong on a patrol, they would call the police and ask their advice as to what to do? It is alleged that these statements were made as a part of the res gestæ of a police raid upon the Columbian headquarters, and that the ruling deprived the defendant of the testimony of a police officer, which would be far more beneficial to him than his own statement, as to the purpose of the organization to promote the civic and political betterment of the poor white folk of Atlanta.

The fact that the statements of the defendant made to the police officer were made during a police raid upon the Columbian headquarters does not set forth such a circumstance as clearly excludes the idea of premeditation in the statement; but, to the contrary, such fact affirms the suspicion that the utterances are unreliable and inadmissible as hearsay. It is not competent to introduce, in behalf of the accused, evidence of his own self-serving declarations. *Pope v. State*, 42 *Ga. App.* 680 (6) (157 S. E. 211). This ground shows no error.

11. Ground 10. Error is assigned in this ground upon the refusal of the judge to allow the defendant's counsel on the cross-examination of the State's witness Akin to question the witness as to his relations with certain members of the Anti-Nazi League in New York. When such questions were attempted to be asked and were objected to, the defendant's counsel stated that he would connect up the evidence, but he did not state in what manner he would connect it up. The court ruled that the proffered evidence was irrelevant and immaterial. It is contended that the ruling deprived the defendant of his right on cross-examination to reveal the motive of the hostile witness in giving conflicting testimony as to certain facts, which testimony is set out at length in this ground of the motion for a new trial.

The ground does not show that the attention of the court was called to conflicting testimony, if any, at the time of the ruling in order to point out to the court the manner in which the proffered evidence was relevant and material — in discrediting the testimony of the witness. This court can consider the ruling of the trial court in the light of those matters only which were before such court at the time of the ruling. It does not appear that the court abused its discretion in disallowing the questions upon the matters then before it.

12. Ground 11. Inasmuch as the case is being reversed on other grounds and the ruling assigned as error in this ground is not likely to occur upon another trial, it is unnecessary to pass upon it.

13. Ground 12. This ground contends that "the following material evidence offered by movant was illegally stricken and withheld by the court from the jury on demand of State's counsel and against the demand of movant, to wit: the last three words of an answer given by Miss Betty Penland, a witness for movant, in answer to a question put to her by movant's counsel on her direct examination, which question and answer as originally put and given, with the objection and ensuing ruling and remarks, follow: 'Q. Did Childers, did you see Childers do something after November 24th? If so, explain what it was? A. Childers went to New York City with the Jews. Mr. Webb: Now, we object— The Court: I sustain that objection and rule it out. Mr. Webb: That is why they put this witness up here, to try to inject some prejudice in this case. Mr. Loomis: I object to counsel's remark. It is grossly improper and I ask Your Honor that he be rebuked for it. The Court: I rule out the question and I am going to instruct the witness not to answer any question except what is asked and not add anything to it. Mr. Loomis: How much of that question is out, may I ask, your Honor? The Court: They went to New York, that is all I permit, if she knows they went to New York.' "

The rulings of the court in this ground, as thus stated, were not reversible error; and other matters relating to this ground, sought to be raised for the first time in the motion for a new

trial, cannot be considered because they were not raised during the progress of the trial. *Pulliam* v. *State,* 196 *Ga.* 782, 790 (28 S. E. 2d, 139); *Fortenberry* v. *State,* 175 *Ga.* 317, 319 (165 S. E. 215).

14. Ground 13. Code § 59-709 provides as follows: "In all criminal cases, the following oath shall be administered to the petit jury, to wit: 'You shall well and truly try the issue formed upon this bill of indictment between the State of Georgia and A. B., who is charged (here state the crime or offense), and a true verdict give according to the evidence. So help you God." The oath provided in this section was administered verbatim to the petit jury in this case, inserting in the appropriate place the name of the defendant, and in the place for the offense the word "misdemeanor." "The oath prescribed in the Penal Code, § 979 [§ 59-709], is the only oath designed for jurors in criminal cases." *Taylor* v. *State,* 121 *Ga.* 348 (2) (49 S. E. 303). See also *Burke* v. *State,* supra. The objection of the defendant that the oath should include some reference to the right of the jury to believe the defendant's statement in preference to the sworn testimony in the case is also without merit.

15. Grounds 14 and 15. Code § 59-806 provides in part: "On trials for felonies any juror may be put upon his voir dire and the following questions shall be propounded to him, viz: 1. 'Have you, from having seen the crime committed, or having heard any of the testimony delivered on oath, formed and expressed any opinion in regard to the guilt or innocence of the prisoner at the bar?' "

A question asked in the language of this Code section is in proper form to ascertain whether the juror is competent or not in qualifying a jury in a felony case, and the use of the word "crime" in the statutory form of the question given by the Code is not objectionable on the ground that it assumes in advance that a crime has been committed. This statutory question is likewise in proper form and is available for use by the court in ascertaining the competency or incompetency of a juror in a misdemeanor case. *Jacobs* v. *State,* 1 *Ga. App.* 519 (3) (57 S. E. 1063). Hence the voir dire question in this, a misdemeanor, case was not error because it used the word "crime" as provided in the form prescribed by the Code section.

172

The defendant also contends that either the judge or the clerk of the court are required to administer the voir dire questions to prospective jurors, and that it was error for the judge to cause the questions to be propounded by the solicitor.

When, in a misdemeanor case, it becomes the duty of the judge to test the competency of a juror to pass upon the issues in the case, he may propound, "or cause to be propounded" (*Garner* v. *State,* 67 *Ga. App.* 772 (3), 21 S. E. 2d, 656) such questions as he in his discretion may deem appropriate; and it is not error for him to cause these questions to be propounded by the solicitor. See *Jacobs* v. *State,* supra. Grounds 14 and 15 are not meritorious.

16. Ground 16. The court charged as to credibility of witnesses: "When witnesses appear and testify, they are presumed to speak the truth, and are to be believed by the jury, unless impeached in some manner provided by law, or *otherwise discredited in your judgment.* A witness may be impeached by disproving the facts testified to by. him, or by proof of contradictory statements previously made by him of matters relevant to his testimony and to the case, or by proof of general bad character. A witness sought to be impeached by disproving the facts testified to by him, may be corroborated by other testimony to the effect that the facts stated by him are true. Statements made out of court and not under oath are not evidence, but they are to be considered by you on the question of impeaching or discrediting the attacked witness. When the credibility of a witness is attacked, as by an effort to impeach him by any of the methods pointed out by law, which I have just described, the jury then become the triors of the credibility of the witness sought to be impeached and of the witness or witnesses by whose testimony the attack is made. You are to weigh the opposing testimony and at last say whether you will discredit the testimony of the witness sought to be impeached and consequently give credit to that introduced by way of impeachment, or whether you will discredit that testimony introduced for the purpose of impeachment, and credit that of the witness attacked. In a word, it is the exclusive province of the jury under all the attendant circumstances and conditions

to determine whether a witness has been successfully impeached by any of the legal methods. Where his unworthiness of credit is absolutely established in the minds of the jury, he ought not to be believed, and it is the duty of the jury to disregard his testimony, unless it is corroborated, in which case you may believe the witness, it being, as a matter of course, always for the jury to determine whether a witness has or has not been in fact so impeached."

In ground 16 it is contended that this charge was error: (a) because, though it was correct as to the statutory methods of impeachment, it was completely silent as to the non-statutory law touching the numerous circumstances in the case which affected particularly the testimony of a named witness; (b) because, although the judge undertook to charge the law of impeachment of witnesses, he did not go all the way and instruct the jury fully on the non-statutory law relative to the numerous other means of discrediting the witness, to which means the movant had resorted in this case; and (c) because, it was of such character as to induce the jury to understand that contradictory statements previously made — the second of the three statutory modes of impeachment therein referred to — are to be considered as impeaching only when proved by witnesses questioned for the purpose of impeachment, and not when admitted by the attacked witness himself.

The rules here given for the determination of the reliability of a witness substantially comply with the provisions of Code § 38-1805, and the charge gives the general, fundamental, underlying rules on the question of impeaching a witness. *Central of Ga. Ry. Co.* v. *McGuire,* 10 *Ga. App.* 483, 484 (3) (73 S. E. 702). If the defendant wished instructions elaborating upon this rule, he must have requested it, or else the court's omission to so elaborate will not be reversible error. *Millen &c. R. Co.* v. *Allen,* 130 *Ga.* 656, 657 (5) (61 S. E. 541); *Jones* v. *State,* 70 *Ga. App.* 431, 446 (28 S. E. 2d, 373); *Hamilton* v. *State,* 143 *Ga.* 265 (4, 5). Thus the exceptions to the charge in contentions (a) and (b) of this ground, supra, are not meritorious.

The charge quoted above and here in question in the use of

the words, "proof of contradictory statements," meant any or all proof of contradictory statements; and the fact that in his charge the judge went on to explain that, if there was a conflict in the testimony of the witness attacking the witness sought to be impeached and of the witness attacked, the jury were the triors of the credibility of the attacked and the attacking witness, did not mislead the jury into believing that the court impliedly referred only to such contradictory statements as were proved by an attacking witness, thus excluding all those contradictory statements proved by admission of the witness sought to be impeached. The jury must have understood that the charge meant any or all proof of contradictory statements previously made by the witness sought to be impeached as to matters relevant to his testimony and to the case. This ground shows no reversible error.

17. Ground 16-A. Error is assigned in this ground upon the charge to the jury as to the offenses alleged in counts two, four, and five of the indictment.

Code § 26-4902, a violation of which is charged in each count of the indictment, provides, as a general offense, that "Any person who shall, without authority, exercise or attempt to exercise the functions of, or hold himself out to anyone as, a deputy sheriff, marshal, policeman, constable, or other peace officer or detective shall be guilty of a misdemeanor." The section then makes provision for certain exceptions. When the State has proved a violation as to the general offense defined in this law, the burden is upon the defendant to bring himself by proof within one of such exceptions. *Ferguson* v. *State,* 1 *Ga. App.* 841 (58 S. E. 57); *Rumph* v. *State,* 119 *Ga.* 121, 123 (45 S. E. 1002); *Herring* v. *State,* 114 *Ga.* 96, 101 (39 S. E. 866).

The judge in his charge did not confine himself to the abstract, but charged the jury in the concrete and enumerated the acts and elements necessary to constitute the offense of acting as a police officer without authority as set forth in each count of the indictment; and he instructed them that, if these essential elements of each offense were established by proof [having already instructed them as to reasonable doubt and the burden of proof in a criminal case], such acts and conduct would be

sufficient to authorize a finding that the defendant was guilty as charged in each count. This is permissible. "There was no request to charge, and if the defendant wanted the fuller or more abstract charge, he should have so requested." *Martin* v. *State*, 57 *Ga. App.* 346, 347 (195 S. E. 313).

Moreover, the ground fails to point out wherein the charge objected to was defective, and there is no merit in the various abstract principles of law argued in reference thereto.

18. Ground 16-B. This ground contends that the charge upon various principles of conspiracy was "misleading to the jury because it permitted them to think and act upon the proposition that such proof from the conspirators, one or more, was sufficient for the purpose of their finding that such a conspiracy. . . ."

Under our law in a misdemeanor case the testimony of a single witness, even though he be an accomplice, if believed by the jury, is sufficient to establish a fact or authorize a verdict. Code, § 38-121; *Branch* v. *State*, 46 *Ga. App.* 66 (166 S. E. 685); *Grant* v. *State*, 89 *Ga.* 393, 394 (5) (15 S. E. 488).

19. Ground 16-C. It is here assigned as error that the court — after charging, "At all times referred to in each and every count of the indictment, the defendant and his fellow members of the Columbians, Inc., had a perfect right to use the streets of Atlanta and in such use to walk peaceably along the same, so long as they did not unduly interfere with the right of others so to use the same and so long as they engaged in no disorder," as requested by the defendant — added to the requested charge the following, "or violate any law." This ground shows no reversible error.

20. Ground 16-D. The record shows that "counsel for the State in this trial were seated in the customary places that they usually sit during the trial of a case," and that on the day in question the solicitor-general was seated at the table customarily occupied by the prosecuting attorney. The record does not show that this arrangement was unfair or harmful to the defendant. There was no error in the court's refusing the motion of the defendant that the seating arrangement of counsel for the State and the defendant be changed or rearranged.

21. Ground 17. This ground assigns error in that the court in charging the jury misstated the date alleged in count four of the indictment. Such lapsus linguæ is not likely to recur upon another trial.

22. Ground 18. It is here complained that the court erred in failing to charge in connection with count four that, where the only proof of the date of a crime, when the date is material, consists of the admission of the same by the defendant to the witness, the proof is suspect and should not be accepted by the jury in the absence of corroborating evidence as to the date of the offense.

An admission of the defendant to a single witness when introduced in evidence is proof of the fact or facts involved in the admission, if believed; and in a misdemeanor case the testimony of the single witness as to the admission, even though he be an accomplice, is sufficient proof thereof, without corroboration, if he be believed by the jury. Code, § 38-121. The judge charged the jury as to impeachment and the necessity for corroboration of a witness as to testimony upon which the jury found that the witness had been successfully impeached. If the defendant had wished more specific instructions in this regard, he should have so requested the court in writing. This ground is not meritorious.

23. Ground 19. The court charged the jury: "I charge you that the police of a State, in a comprehensive sense, embraces its system of internal regulation by which it is sought not only to preserve the public order, and to prevent offenses against the State, but also to establish, for the intercourse of citizen with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others."

It is contended by the defendant that he was indicted under Code § 26-4902, which by its own express terms seeks to protect from usurpation that part only of the police power relative to preserving the public peace, and which may not be expanded to embrace that system of internal regulation by which it is

sought "to establish, for the intercourse of citizen with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others"; and that such charge of the court was misleading to the jury, in that it necessarily suggested to them that the movant's political and social program infringed upon the police and police power protected by the statute.

With the contention of the defendant, that the express terms of the statute protect only that part of the police power relative to preserving the public peace, we cannot agree. However, while it may be correct in the abstract, we do agree that the charge is inapplicable to the offense for which the defendant was here on trial, which was for the unauthorized exercise of the functions of certain of the officers designated in the Code section, as distinguished from the "police of the State" embraced in the charge. The court elsewhere charged: "Before you would be authorized to find the defendant guilty of the offenses charged in said counts, or any one of the same, you must believe beyond a reasonable doubt that the defendant Loomis did the acts therein charged and in the manner charged and at the time charged with the intent to violate the particular statute or law that he is charged with violating in said count or counts"; and we do not think that the giving of the charge here objected to constituted reversible error under these circumstances, but we include this reference for the guidance of the court on the next trial.

24. Ground 20. The charge of the court on the subject of arrest was correct in the abstract, was authorized by the evidence, and is not subject to the objections urged.

25. Ground 21. This ground complains that the court erred to the prejudice of the defendant in refusing to permit the introduction into evidence of all notes of the court stenographer upon the testimony in the former trial of the defendant for riot, contending that the evidence on the former trial was material to show that the defendant was being placed in double

jeopardy for the same offense. The evidence was tendered without laying any foundation for its introduction.

After some colloquy, the court ruled that at the beginning of the case counsel for the defendant had filed a plea of "res adjudicata" [more properly termed autrefois convict] on the idea that the basis for the offense of which the defendant was now on trial was the same as that of the offense for which he was previously tried, that the demurrer or plea of the State to this plea of the defendant was sustained by the court after hearing argument on the same, and the motion of the defendant was overruled. The court stated: "The rule is: where pleadings have been stricken by demurrer, it is not error for the court to refuse to permit evidence to be offered on the plea that was stricken."

The judgment upon the demurrer to the plea of former jeopardy was preserved for the review of this court by exceptions pendente lite, and we have ruled that the court did not err in sustaining the demurrer. Therefore the evidence here tendered for the purpose of proving that plea was of course inadmissible.

It may also be said that this evidence was not tendered for the purpose of showing the defendant to be within an exception to the statutory offense, and the argument that it was admissible for this purpose was not urged to the trial court at the time the evidence was excluded. This question, therefore, is not now properly before this court for review. This ground is not meritorious.

26. Ground 22. Since the case must go back for a new trial, the question presented in this ground, assigning error on the failure of the court to grant a continuance because one of the witnesses was ill and unable to attend the trial, is not likely to arise upon another trial and it is unnecessary to rule upon it.

27. Grounds 23, 24, and 27. In the opening statement to the jury, the solicitor-general stated: "The State will show the defendant and his associates sought to set up a government here patterned after the Nazi Government and Adolf Hitler's government in Germany." It is contended in grounds 23 and 24 that the remarks complained of were not referable to any

evidence which could legally be introduced in evidence, nor to any evidence which was in fact later legally introduced; and that the court erred in refusing a mistrial because it did not remove the effect of the unauthorized prejudicial remarks by its precautionary words to the jury, as follows: "Gentlemen of the jury, the solicitor has a right to outline the State's case, and counsel for the defendant has a right to outline before you the contentions of the defendant. What either might say, the solicitor or the attorney for the defendant might say, is not evidence in the case. He is merely stating the contentions of the State and what they expect to prove in the case. Mr. Solicitor, just confine yourself to what you expect to prove."

"In opening a criminal case to a jury preliminary to the introduction of evidence, the solicitor-general may state what he expects to prove. If, on an objection to a statement by the solicitor-general, the court declines to interfere, but instructs the jury, 'Of course, you will understand, gentlemen of the jury, what the solicitor says is not evidence, and unless he adduces evidence of what he says he is going to prove, you won't consider it at all,' no error is committed where it does not appear that the remarks of the solicitor-general were otherwise than in good faith." *Daniels* v. *State,* 58 *Ga. App.* 599, 600 (3) (199 S. E. 572).

The State's witness, James Akin, during the trial testified: "Loomis told me that after he took over the Government he was going to set up a dictatorship similar to the National Socialist Party in Germany." He also testified that Burke, who was previously tried and convicted under the identical indictment in this case, had told him that he wanted seven men in his little inner group because that was what Hitler had in his inner circle. Ralph Childers testified for the State that the defendant and Burke had told him that the purpose of the Columbian organization was ultimately to take over the United States Government, after taking over the city government and the State government, by force and violence, murder and terrorism ["we were to chase the negroes off the streets, to beat them up, to kill them and stick knives in their dead hands if we had to, and phone the police"]. He also testified: "At the

open meetings they would tell people that, instead of intending to advance by force and violence, it was the purpose of the defendant and Burke and the Columbians organization to make progress and advance in the influence of the American people by persuading them to vote for them. . . He said he would try to get them to vote if he could. . . If he couldn't get it by votes, he was going to take it over anyhow." There is no assignment of error upon the allowance in evidence of any of this testimony.

Thus, from this evidence the jury would have been authorized to find that the solicitor-general proved the opening statement here objected to; and the court, at the time of the objection, properly cautioned the jury that the statement of the solicitor was not evidence in the case, but was merely a statement of what the solicitor expected to prove. Nor is there any evidence that the remarks of the solicitor-general were otherwise than in good faith. Grounds 23 and 24 are therefore not meritorious.

In ground 27 it is shown that Mr. Boyd, the assistant solicitor, in his opening argument to the jury stated: "The defendant is another Hitler, his men even dressing as Hitler's men dressed." In the ground it is stated that the defendant's counsel objected to this statement and moved for a mistrial on the ground that there was "no evidence in the record as to how Hitler's men dressed." The court ruled: "That is right, Mr. Boyd. There is no evidence in the record in that regard." Mr. Boyd: "Sir, I am merely trying to draw a comparison or a reasonable deduction from what is in evidence." The Court: "Don't go into that." Error is assigned on the failure to grant a mistrial, in that the corrective measures taken by the court, forbidding counsel to make reference to how Hitler's men dressed, were not sufficient to remove the passion and prejudice against the defendant which the remark was calculated to arouse in the minds of the jury.

The court, on the motion of the accused, ruled that the remark of the assistant solicitor in his argument to the jury was improper, and the assignment of error relative to such matter of argument involves a question which is not likely to recur upon the next trial.

28. Grounds 25 and 29. On the motion of the defendant for a mistrial, the court instructed the assistant solicitor in ground 25, and the solicitor-general in ground 29, not to use the language objected to by the accused, and the assignment of error relative to such argument also involves a question not likely to recur upon the next trial.

29. Ground 26. This special ground alleges error in the court's refusal to declare a mistrial because State's counsel stated in his argument to the jury: "For the past week defendant's counsel has had cockleburs in his pants; we will say he acted like he had."

"Generally the conduct of a case by one side, during the trial, furnishes a legitimate subject for comment by the adverse side; and this is true although the conduct discussed may not involve any illegality." *Purvis* v. *Atlanta Northern Ry. Co.*, 145 *Ga.* 517, 519 (2) (89 S. E. 571). In the instant case, counsel for the defendant engaged in many colloquies with the court and made an unusual number of objections during the progress of the trial. Although he may have had a right to have done so, these repeated occurrences would be such conduct of the trial upon which adverse counsel might comment, giving expression to amusing analogies between ideas apparently unrelated by an ingenious association of one with the other; "and he may, if he will, give play to his wit, or wing to his imagination." *Mitchum* v. *State*, 11 *Ga.* 615, 631. His manner of comment, however, must be decorous, and of this the court in its discretion is the judge.

We cannot say that the court abused its discretion in refusing to withdraw the case from the jury and declare a mistrial for the reason assigned in this ground.

30. Ground 28. This ground shows three different statements of the assistant solicitor in his opening argument to the jury. The ground itself does not set forth the statement, the objection, and the ruling of the court in regard to each with sufficient clarity to enable us to understand clearly the errors alleged to have been committed. Therefore no question for our decision is therein presented.

31. Ground 30. In his concluding argument the solicitor-

general made the following plea to the jury: "If you fail to bring a verdict of guilty, I shall feel terribly disappointed; more disappointed than I have ever been in my life." The defendant made a motion for a mistrial, which was overruled, and the solicitor was directed to go ahead with his argument.

"Counsel are allowed the largest liberties in argument of cases before juries; and whether the argument be logical or illogical, or whether the inferences and deductions drawn by them from the facts in evidence, or facts of a kind of which judicial cognizance may be taken without proof, are correct, or not, this court will have no power to intervene. . . 'It has been said that an advocate, however unrestricted he may or ought to be in the use of all the forms of rhetoric such as invective, satire, ridicule, or humor, and every variety of illustration drawn from the facts in evidence, or from facts hypothetically assumed, ought not to be allowed to make himself a witness, and state facts within his own knowledge touching the case under discussion.' . . 'What the law forbids is the introduction into a case, by way of argument, of facts not in the record and calculated to prejudice the accused.' . . Flights of oratory and false logic do not call for objections, rebukes, or mistrials. It is the introduction of facts not in evidence that requires the application of such remedies." *Brooks* v. *State*, 55 *Ga. App.* 227, 231 (189 S. E. 852). The preceding quotation was but an attempt by this court to restate in other language those famous words of Judge Nisbet, revered by the bar of Georgia and oft quoted by the bench in other States, in which he said: "It is contrary to law for counsel to comment upon facts not proven. He represents his client — he is the substitute of his client; whatever the client may do in the conduct of his cause, therefore his counsel may do. In relation to his liberty of speech, the largest and most liberal freedom is allowed, and the law protects him in it. The right of discussing the merits of his cause; both as to the law and the facts, is indispensable to every party; the same right appertains to his counsel. The range of discussion is wide — very wide. He is entitled to be heard in argument upon every question of law, that may arise in the cause; in his addresses to the jury it [is] his right to descant

upon the facts proven or admitted in the pleadings; to arraign the conduct of parties; impugn, excuse, justify or condemn motives, so far as they are developed in evidence; assail the credibility of witnesses, when that is impeached by direct evidence, or by the inconsistency or incoherence of his .testimony, his manner of testifying, his appearance, or by circumstances. His illustrations may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination. To his freedom of speech, however, there are some limitations." *Mitchum* v. *State*, 11 *Ga.* 615, 630.

Thus, in *Ivey* v. *State*, 113 *Ga.* 1062 (39 S. E. 423, 54 L. R. A. 959), the Supreme Court held: "While the State is the accuser in every criminal case, it does not seek the conviction or punishment of any one of its citizens unless the evidence shows beyond a reasonable doubt that he is guilty. An officer is appointed to represent the State in the courts, and it is his duty, when the evidence shows or tends to show the guilt of one on trial for crime, to argue to the jury that the evidence is sufficient to authorize a conviction and that the jury should return a verdict of guilty. The State, however, will in no case permit its representative to go outside of the evidence to find a basis for appealing to the sentiments, passions, or prejudices of the jury in order to obtain a conviction. . . The solicitor-general, appointed to represent the interest of the State in the trial of offenders, does not occupy the position of counsel generally. His duty does not require him to insist upon the conviction of the accused unless the evidence is sufficient to authorize it. His office is quasi-judicial; and while it is his duty, if he honestly believes that the evidence shows the guilt of the accused, to insist upon this view before the jury and to use in his argument all his ability and skill in presenting the case as made by the pleadings and evidence, still it is under no circumstances his duty either to go outside of the case and state facts not in evidence or to appeal to the passions or prejudices of the jury." And in *Moore* v. *State*, 10 *Ga. App.* 805, 811 (74 S. E. 315), Judge Russell, speaking for this court, said: "In our opinion, therefore, the question in every case turns upon whether the

nature of the argument is such that it is manifestly improper and prejudicial to the rights of the opposite party. If the nature of the remark is such that it can plainly be seen that it could not have affected the result, the error would be harmless, and would afford no ground for a new trial. For this reason, if the argument was directed to some collateral matter not directly affecting the guilt or innocence of the accused in a criminal trial, though the argument might be improper, the error would seem to be immaterial. . . On the other hand, if the statement is an expression of the personal opinion of the prosecuting attorney in a criminal case that the defendant is guilty, this is error, and it must be presumed to be prejudicial error, because cases can be imagined where counsel might be engaged for the prosecution whose personal opinion would have such weight with the jury as to unduly affect their finding upon the facts, or if the argument is such, although deducible from some of the evidence, as to address itself unfairly to passion or prejudice . . this . . argument is not legitimate." See also *Broznack v. State,* 109 *Ga.* 514, 516 (35 S. E. 123), *Jones v. State,* 123 *Ga.* 129, 131 (51 S. E. 312), *Nixon v. State,* 14 *Ga. App.* 261, 264 (80 S. E. 513), *Southern Stages v. Brown,* 76 *Ga. App.* 694 (46 S. E. 2d, 765), *Georgia Power Co. v. Puckett,* 181 *Ga.* 386, 389 (182 S. E. 384), *Forster v. State,* 60 *Ga. App.* 598 (4 S. E. 2d, 498), *Byrd v. State,* 72 *Ga. App.* 840, 842 (35 S. E. 2d, 385), and cases cited, and compare *Floyd v. State,* 143 *Ga.* 286, 289 (84 S. E. 971) ; *Wells v. State,* 194 *Ga.* 70, 74 (20 S. E. 2d, 580) ; *Johnson v. State,* 150 *Ga.* 67 (1) (102 S. E. 439).

We know not what casual, or even intimate, personal relationship the solicitor-general may have borne to one or more of the jury; nor can we say what weight the jury may have bestowed upon his expression of personal anxiety lest he lose a conviction of the defendant. It seems to us that, in the argument here objected to, he was making a statement of a substantive fact — that is, his personal feelings in the matter — which had not been made, nor could they be made, an issue in the case, and which should not have been in the minds of the jury while they were considering and making up their verdict. The judge here took no corrective measures, but merely overruled

the motion and directed the solicitor to proceed. We think that this was reversible error.

32. Ground 31. Under our ruling on special ground 1 in division 3 of this opinion, it is unlikely that the questions presented in ground 3, — concerning improper references in the argument of the solicitor to the religion, or lack of religion, of the defendant — will arise upon another trial, and it is unnecessary for us to rule upon them here.

33. Ground 32. The solicitor-general in his argument to the jury made the following statement: "I would have to be crazy to believe [under the evidence] in the innocence of the defendant." The accused objected to this as improper argument by a motion for a mistrial and the court overruled the motion.

We think that the jury must have construed this remark, just as we do, to be merely an indulgence in satire and ridicule based upon the evidence, and not to be an introduction of some substantive fact within the knowledge of the solicitor which had not been introduced in evidence. See, in this connection, *Floyd v. State,* 143 *Ga.* 286, 289 (84 S. E. 971); *Hunt v. State,* 64 *Ga. App.* 324, 325 (13 S. E. 2d, 121); *Brooks v. State,* 55 *Ga. App.* 227 (189 S. E. 852); *Garrett v. State,* 75 *Ga. App.* 577, 579 (44 S. E. 2d, 153); *Cammons v. State,* 59 *Ga. App.* 759, 767 (2 S. E. 2d, 205). The ground shows no reversible error when the only motion before the court was for a mistrial.

34. Ground 33. It is unnecessary for us to consider this assignment of error, ·made as an extraordinary ground for a new trial — the discovery of certain allegedly new evidence — since this evidence, if legal, may be introduced on another trial.

35. No error is shown in the exception taken to the comments by the trial judge upon certain grounds of the motion for a new trial. "The judge may both explain and vindicate his rulings. By so doing he may subserve the cause of truth and justice." *Ford v. Holmes,* 61 *Ga.* 419, 430.

36. The assignment of error on the refusal of the judge to direct the reporter to include in the record certain remarks of the assistant solicitor involves a question which is not likely to recur upon a new trial.

As the case will go back for another trial where the evidence may not be the same, this court, following the usual practice, will not rule upon the sufficiency of the evidence to support the verdict.

*Judgment reversed.   Gardner and Townsend, JJ., concur.*